SECURITY NATIONAL BANK OF SIOUX CITY, IOWA, Appellant, vs. ST. CROIX POWER COMPANY, imp., Respondent.

*February 7—March 21, 1903.*

*Federal courts: Decisions, how far binding on state courts: Powers of national banks: Defense of* ultra vires: *Mechanics' liens: Subcontractors: Novation of parties: Pleading: Description of land: Notice of claim: Right to recover on contract.*

1. This court is bound to follow the holding of the United States supreme court as to the powers of national banks; but upon the question of the effect or application of such holding as a defense in a given case properly brought in the state courts, this court may properly follow its own decisions, even when differing from the decisions of the federal courts.

2. Thus, in an action by a national bank to foreclose a mechanic's lien for work done and materials furnished, where it was alleged as a defense that the acts of the bank were *ultra vires,* the settled doctrine of this state is applied, that such fact is not available as a defense.

3. A subcontractor, after assigning his contract to a bank as collateral security for an existing indebtedness, died insolvent, leaving the work unfinished. With the consent of his administratrix, of the principal contractor, and of the owner, the bank, in order to protect its security, assumed the completion of the work and was accepted as subcontractor in place of the deceased. *Held*, that there was a complete novation of parties and that the bank was entitled to the lien of a subcontractor.

4. In an action to foreclose a mechanic's lien, the claim for which was alleged to have been filed in the proper office in St. Croix county, "that being the proper county therefor," the land upon which the lien was claimed consisted of two parcels, one of which was described as being in "section 22, township 31, range 19 *west*," and the other as being in "section 21, township 31, range 19." *Held*, that it was a fair inference that the range 19 in the second description was the same range 19 named in the first,—such construction locating both parcels in St. Croix county.

5. Where, in an action to foreclose a subcontractor's lien, the complaint alleges that plaintiff duly gave notice to the owner, but proceeds to set forth specifically what such notice contained, and the notice as there given fails to state that plaintiff had performed or furnished any labor or material, as prescribed in sec. 3315, Stats. 1898, and fails to describe the land to be affected by the lien claimed, the complaint fails to state a cause of action to foreclose a lien.

6. Allegations of the complaint, in such case, that, after plaintiff had served his notice of lien, the owner settled with the principal contractor and released him from his contract and at the same time assumed payment of all his building obligations, including the amount due plaintiff, are *held* to show a contract for plaintiff's benefit which, under sec. 3324, Stats. 1898, he may enforce in the lien action.

Appeal from an order of the circuit court for St. Croix county: E. W. Helms, Circuit Judge. *Reversed.*

This is an action to foreclose a mechanic's lien. The complaint, after alleging the incorporation of the appellant, the respondent, and certain other corporations who were parties, alleges in substance that on August 11, 1899, the defendant Robert N. King made a contract with the respondent the *St. Croix Power Company* to construct a dam, power house, flume, and tailrace upon the lands of the power company on

Apple river, St. Croix county, Wisconsin, in consideration of $445,000 to be paid, and that the said King fully performed said contract before the commencement of this action; that on September 15, 1899, one John E. Robson, of Sioux City, Iowa, made a contract with the said King to construct the flume, which was a part of King's contract, according to certain specifications and details, which were fully set forth in the complaint; that said Robson entered upon the construction of said flume, and on the 21st day of September, 1899, assigned said contract to the plaintiff to secure an existing indebtedness which he owed the plaintiff, and that the plaintiff gave due notice of said assignment to the defendants King and the power company; that, in December, Robson died insolvent; that his widow was thereafter appointed administratrix, and that, with her consent and for the protection of its security, the plaintiff assumed the completion of the work, and that, with the consent of the defendants King and the power company, the work was continued by the plaintiff as subcontractor; that the plaintiff expended many thousands of dollars in completing said work in accordance with the terms of the contract, and that the same was done under the direction of the engineers of King and the power company; that the plaintiff was accepted by the defendants King and the power company as subcontractor for the purpose of completing said work, and that, after the completion thereof, said work was duly accepted by said defendants; that said work and the materials furnished in pursuance of said contract were of the agreed price in all of $33,393.57, and that no part thereof has been paid, except the sum of $25,838.71, and that there is still due and owing to the plaintiff from said King and the said power company for such work and materials the sum of $7,554.86; that the last date of the performance of such work was on the 7th day of August, 1900.

"That within sixty days from the last charge for performing said work, labor, and services, and furnishing the mate-

rials aforesaid, to wit, on the 31st day of August, 1900, the plaintiff above named duly gave notice in writing to the *St. Croix Power Company,* the owner of the property hereinafter described, by delivering to and leaving with H. C. Baker, Esq., the vice president and general manager of said company, a true copy thereof, and filed a copy of said notice in the office of the clerk of the circuit court for St. Croix county, which said notice set forth that the claimant has been employed by Robert N. King to perform work, labor, and services, and furnish materials, together with a statement of the work performed and materials furnished, and the amount due therefor from Robert N. King to this plaintiff, to wit, the sum of $7,554.86, as hereinabove set forth, and that the plaintiff claimed a lien therefor given by chapter 143 of the Revised Statutes of the State of Wisconsin for the year 1898; that thereafter, and within six months from the date of the last charge of said work and labor performed and materials furnished as aforesaid, and on the 1st day of September, 1900, the plaintiff duly caused to be filed a claim for lien, pursuant to chapter 143 of the Revised Statutes, for the amount due and owing from said defendant Robert N. King to the plaintiff, in the office of the clerk of the circuit court for St. Croix county, that being the proper county therefor, which claim for lien so filed contained a statement of the contract or demand upon which it was founded, the name of the person against whom the demand is claimed, the name of the claimant, the last date of the performing the work, labor, and services, and materials furnished, a description of the property affected thereby, and a statement of the amount claimed; that due notice of the plaintiff's claim in writing had heretofore been given the defendant the *St. Croix Power Company,* and all other material facts in relation thereto, which claim was duly signed by John W. Bashford, the attorney for the claimant; that one year has not elapsed since the last charge aforesaid; that the following is a description of the property affected thereby: [Here follows a description of the property.]

. . . Plaintiff further alleges that in and by the contract between the defendant Robert N. King and the defendant the *St. Croix Power Company,* dated August 11, 1899, it is expressly agreed that if any indebtedness, charge, or claim shall become a lien upon any of the said land, property, structures, machinery, or anything thereby contracted for, or any

lien therefor shall be filed in the manner provided by law, whether the same shall be filed or claimed by any material-man, subcontractor, laborer, judgment creditors, or by any other person, copartnership, or corporation holding or claiming the same against said party of the first part, his successors or assigns, or against any subcontractor of said party of the second part, his successors or assigns, and said lien shall not be discharged or removed within thirty days after notice thereof to said party of the first part, said party of the second part may, and it is hereby authorized to, cause the same to be satisfied and discharged, and the amount, if any, paid by said party of the second part to secure said satisfaction and discharge, shall be taken and considered as a payment made hereunder by said party of the second part unto said party of the first part, without reference to the actual validity of any such lien.

"That after the plaintiff had served notice of its claim for lien upon the defendant the *St. Croix Power Company,* and had filed its lien in the office of the clerk of the circuit court for St. Croix county, the defendant the *St. Croix Power Company* settled with the defendant R. N. King, and paid said King a large sum of money, and released said King from said contract. That at the same time the defendant the *St. Croix Power Company* assumed the payment of all the obligations of the defendant Robert N. King with reference to the completion of the work, which included the amount due and owing the plaintiff."

Judgment was demanded against the defendants King and the power company for $7,524.86, with interest and costs; that the demands of all other persons who have filed claims for liens upon said premises be ascertained and adjudged; and that all of said liens, including that of the plaintiff, be enforced by sale of the premises described.

To this complaint the defendant the *St. Croix Power Company* demurred, on the grounds (1) that the plaintiff has no legal capacity to sue; (2) that several causes of action have been improperly united; and (3) that the complaint does not state facts sufficient to constitute a cause of action. This demurrer was sustained, and the plaintiff appeals.

For the appellant there was a brief by *John W. Bashford,* attorney, and *Wright, Call & Hubbard,* of counsel, a separate brief by *John W. Bashford,* attorney, and *R. M. Bashford,* of counsel, and oral argument by *R. M. Bashford.*

For the respondent there were briefs by *Baker & Haven,* attorneys, and *F. W. M. Cutcheon,* of counsel, and oral argument by *H. C. Baker* and *Spencer Haven.*

WINSLOW, J.   The salient facts stated in the complaint may be briefly stated as follows: A national bank received from a subcontractor a building contract as collateral for a pre-existing loan of money, and upon death of the subcontractor, leaving his contract incomplete, proceeded, with the consent and approval of the personal representative of the subcontractor, the principal contractor, and the owner, to fully complete the contract, and now seeks to foreclose a mechanic's lien as subcontractor upon the structure for the unpaid balance due upon the subcontract, which the owner on settlement with the principal contractor assumed and agreed to pay to the plaintiff.   The question whether the plaintiff can maintain an action to foreclose a mechanic's lien will be first considered.

The respondent contends that the act of the bank in proceeding to carry out the building contract was *ultra vires,* and that no right of action can be founded thereon of any kind. It is certainly true that no such power has been conferred upon it in express terms.   It has power to loan money on personal security, and it has all such incidental powers as are necessary to carry on the banking business.   R. S. U. S. sec. 5136 [U. S. Comp. St. 1901, p. 3455].

It is not questioned but that the bank has power to receive and hold the building contract as collateral security for the repayment of a pre-existing loan, and to sell or convert the same into money to pay the loan.   Did it also have power to go on and complete the contract when the contractor died in-

solvent? Was this an incidental power necessary for the carrying on of its legitimate banking business? It might be the only possible course by which anything could be realized out of the collateral, as seems by fair inference to have been the case here; and the argument is somewhat persuasive that in such case the bank should have the power to take all necessary steps to utilize and make valuable its collateral lawfully taken. On the other hand, the argument is that it would be dangerous to the interests of stockholders and depositors to authorize banks to go into such enterprises, involving large expenditures for the purchase of materials and the employment of men, and the incurring of large pecuniary risks in an entirely foreign undertaking, and in support of this view the cases of *National Bank v. Ottawa,* 43 Kan. 294, 23 Pac. 485, *Cockrill v. Abeles,* 30 C. C. A. 223, 86 Fed. 505, and *Cooper v. Hill,* 36 C. C. A. 402, 94 Fed. 582, are cited. The question is certainly one of considerable difficulty, but, in view of considerations to be stated, we do not find it necessary to decide it. This court would unquestionably be bound to follow the holding of the supreme court of the United States as to the powers of national banks—this is strictly a federal question—but on the other hand, upon the question of the effect or application of such holding as a defense in a given case properly brought in the state court, this court may properly follow its own decisions, even when differing from the decisions of the federal courts. Such questions are not federal questions. This court, by a series of decisions, has held that, when a corporation enters into business relations not authorized by its corporate grant of power, the doctrine of *ultra vires* cannot be used by it or by the person with whom it assumes to deal as a means of defeating the obligations assumed. The state alone can take advantage of the abuse. *John V. Farwell Co. v. Wolf,* 96 Wis. 10, 70 N. W. 289, 71 N. W. 109; *Zinc C. Co. v. Bank,* 103 Wis. 125, 79 N. W. 229; *Att'y Gen. ex rel. Askew v. Smith,* 109 Wis. 532, 85 N. W. 512.

Even if it were to be conceded, therefore, that it was beyond the power of a national bank to enter upon the work of constructing the flume and fulfilling Robson's contract, still we are not required to determine what the doctrine of the federal courts. is as to the availability of that fact as a defense. Many cases were cited upon this question; the plaintiff relying upon *National Bank v. Matthews,* 98 U. S. 621, and the cases which follow it, and the defendant upon *McCormick v. Market Bank,* 165 U. S. 549, 17 Sup. Ct. 433, and *California Bank v. Kennedy,* 167 U. S. 368, 17 Sup. Ct. 831, and similar cases. We think it must be confessed that there is some difficulty in reconciling all that is said in the two lines of cases, but, as before stated, the fact that this court has adopted the principle that the question cannot be litigated by private parties, a principle with which we are entirely satisfied, relieves us from further consideration of the question.

We come, then, to the question whether, under the facts stated in the complaint, the plaintiff became a subcontractor for the work, for, if not, it has acquired no right to a lien. Robson was unquestionably a subcontractor, and, had he finished the work, would have been entitled to perfect a lien upon the property. Has the plaintiff succeeded to his rights as subcontractor? The allegations are that Robson, after commencing the work, assigned his contract to the bank as collateral to an existing indebtedness. This was a lawful act, and vested in the bank a valuable interest in the contract. It did not of itself constitute the bank a party to the contract, nor did it carry to the bank any right of lien, but it gave the bank such a beneficial interest therein that it could not be called a volunteer. It is alleged that, after prosecuting the work for a few months, Robson died insolvent, leaving the work unfinished, and his widow was appointed administratrix; that the bank then stepped in, in order to protect its security, and assumed the completion of the work, with the consent of the administratrix, the principal contractor, and the

owner, and was accepted by the principal contractor and owner as subcontractor, furnished the labor and material necessary, and completed the work in accordance with the contract. Do these facts constitute the bank a subcontractor? We think they do, upon well-settled legal principles. It is entirely competent for the parties to an executory contract acting with a third person to substitute such third person, by consent of all, in place of the original contractor. This is simply a species of novation. All parties must, of course, consent to it, and there must be a release of the original contractor, who is to step out. Here it appears that, after the death of Robson and the consequent suspension of the work, by agreement of all parties, including the personal representative of Robson, the bank, the principal contractor, and the owner (whose consent, however, was probably not necessary), the proposal of the bank to go on and finish the work was agreed to, and the bank was accepted as subcontractor in place of the deceased, Robson. This state of facts satisfies the requirements of a complete novation of parties. *Bohn Mfg. Co. v. Reif,* 116 Wis. 471, 93 N. W. 466, and cases cited. These facts put the bank in the shoes of Robson, and constituted it, in truth and in fact, a subcontractor.

It is said that the description of land in the complaint upon which the lien is claimed is so defective that it cannot be located. There are two parcels attempted to be described, the first bounded by an irregular line with many angles and changes of course, and the second a quadrangle of twenty acres. As to the first piece, it is described as being in section 22, township 31, range 19 *west;* the second is described as bounded by a line commencing at a point ten rods north of the N. W. corner of the S. W. quarter of S. W. quarter of section 22, township 31, range 19, thence north forty rods, thence west eighty rods, thence south forty rods, thence east eighty rods to the place of beginning, containing twenty acres, in section 21. It is said that the first piece is bounded by a zig-

zag line which goes nowhere and incloses nothing, and the second piece does not appear to be either east or west of any meridian. We think the objections are untenable. We are unable to say that the boundary line of the first parcel includes nothing. As near as we can determine, it does inclose an irregular parcel of land, while, as to the second description, we think that the fair inference is that the range 19 there named is the same range 19 named in the first description. This locates both parcels in St. Croix county. There is, however, a radical difficulty with the allegation concerning the notice of the subcontractor's lien, which is now to be considered.

Our statute (sec. 3315, Stats. 1898) requires, as a prerequisite to a subcontractor's lien, the giving of a notice, which is required to set forth that he has been employed by the principal contractor to perform or furnish *and has performed or furnished* such work, labor, or material, with a statement of the labor performed or material furnished, the amount due therefor from the principal contractor, and that he claims the lien given by the lien chapter. This court has held that a description of the property to be affected by the lien is an essential part of the notice. *Mark Paine L. Co. v. Douglas Co. I. Co.* 94 Wis. 322, 68 N. W. 1013. Referring to the allegation of notice in the complaint before us, it will be seen that, while it says that the plaintiff duly "gave notice," it proceeds to set forth specifically what said notice contained, and that the notice as given failed to contain any statement that the claimant had furnished any labor or materials, and also failed to give any description of the land to be affected by the lien claimed. These omissions are fatal to the complaint, as a complaint to enforce a mechanic's lien. Unless a notice containing the statutory requirements was served (and we cannot presume that it contained anything more than set forth in the complaint), the lien was lost.

Objection is also made to the allegations of the complaint as to the filing of the claim for a lien under sec. 3320, Stats.

1898. Reference to the complaint, however, shows that the claim is alleged to have contained all that the statute requires.

It results from the foregoing that no cause of action for the foreclosure of a mechanic's lien is stated in the complaint, but it does not necessarily follow that no cause of action of any kind is stated against the appellant. The complaint alleges positively that, after the plaintiff served its notice of lien and filed its claim, the appellant settled with King, and released him from his contract, and at the same time assumed payment of all the building obligations of King, including the amount due the plaintiff. We construe this as meaning that appellant's promise to pay the plaintiff was made as a part of the agreement of settlement. If so, it was a promise based upon a consideration made to one person for the benefit of a third person, which immediately became a contract which the third person could enforce. *Tweeddale v. Tweeddale,* 116 Wis. 517, 93 N. W. 440. Sec. 3324, Stats. 1898, provides that in case a lien claimant fail in his action for a lien, but establish a right "to recover upon contract" for his work or materials, he may have judgment therefor against the person liable.

The complaint states a good cause of action to recover upon contract, hence a general demurrer must be overruled. *Mark Paine L. Co. v. Douglas Co. I. Co.* 94 Wis. 322, 68 N. W. 1013. This is the only cause of action well stated in the complaint, hence the objection that several causes of action are improperly united is untenable.

*By the Court.*—Order reversed, and action remanded with directions to overrule the demurrer to the complaint.