EASTMAN, Respondent, vs. PARKINSON and another, Appellants.

*October 16—November 5, 1907.*

*Corporations: Power of corporation to borrow money: Power to mortgage corporate assets:* Ultra vires *contracts: Impeachment: Statutory regulation of exercise of corporate powers: Fraudulent conveyances: Chattel mortgages: Partial invalidity: Filing: Failure of duty by officer: Actual fraud: Bankruptcy.*

1. A private business corporation has authority to borrow money, give the ordinary evidence therefor and secure payment thereof by a mortgage, subject to such regulations as may be prescribed in the written law or the by-laws of the corporation.
2. An *ultra vires* executed contract made in good faith, the corporation having received and retained the benefit thereof, cannot be impeached by it or any one in its behalf.
3. A statutory regulation of the exercise by a corporation of the power to mortgage its property, such as requiring a majority of the stockholders to consent thereto, but not expressly or by necessary implication declaring a mortgage made in violation

thereof void, is regarded as a law solely for the protection of stockholders.

4. In case of a mortgage made in good faith in violation of a regulation such as mentioned, the corporation having received the full benefit thereof and appropriated the same to its legitimate use, neither it nor any one representing it, nor its creditors nor stockholders, can successfully impeach the transaction, in the absence of some written law to the contrary.

5. A chattel mortgage of stock in trade and other property, not characterized by actual fraud as to creditors of the mortgagor, may be constructively fraudulent as to them respecting such stock and valid as to such other property.

6. Upon a chattel mortgage being delivered to and left with the proper public officer to be filed, that, in legal effect, is accomplished regardless of any failure of duty on the part of such officer.

7. An unfiled chattel mortgage is good between the parties thereto and, in the absence of actual fraud as to creditors of the mortgagor, if the mortgagee neglects to file the instrument till the former incurs indebtedness to third persons and is then adjudged a bankrupt, before any such person obtains a lien on the property, the trustee obtains no better claim thereto than the mortgagor had and cannot successfully impeach the mortgage in the interest of creditors.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Grant county: GEORGE CLEMENTSON, Circuit Judge. *Affirmed.*

The facts as found indicate clearly the nature of the action and the issue. The following is a brief statement of the substance thereof: (1) February 15, 1904, the Platteville Foundry & Machine Company, a corporation, duly made and delivered to plaintiff its promissory note agreeing in consideration of $7,000, then received by it, to pay him said sum in one year after such date, with interest thereon at the rate of six per cent. per annum until paid. (2) To secure such payment said company gave plaintiff a chattel mortgage duly executed, covering the property described in the complaint. The mortgage was duly filed in the office of the proper city clerk. (3) January 9, 1905, defendant *Parkinson,* against

plaintiff's protest, took the mortgaged property from the mortgagor and without authority of law sold the same at public vendue to the defendant *Galena Iron Works Company*, a corporation, having knowledge of plaintiff's rights, which purchaser took possession of said property and has since retained the same. (4) That the reasonable value thereof, exclusive of some stock in trade, at the time of the aforesaid taking was $10,000, and that the purchaser paid therefor, exclusive of the stock in trade, more than said sum. (5) Before the commencement of this action plaintiff demanded possession of said property of each defendant, which demands were refused, and after the mortgage indebtedness became due he demanded payment thereof of each defendant, and such demands were refused. In January, 1905, the mortgagor was duly adjudged a bankrupt and in February thereafter defendant *Parkinson* was duly appointed as the trustee. He thereafter duly qualified and has ever since acted as such trustee. Claims against the estate exceeding $32,000 have been filed and duly allowed, $1,100 of which accrued between the date of the execution of the mortgage and the filing thereof. No lien was obtained on any of the mortgaged property by any creditor of the mortgagor before the mortgage was filed as aforesaid. (7) The mortgage contained a sufficient description of all property covered thereby. (8) It covered some stock in trade which the mortgagor remained in possession of, continuing to make sales without filing any statement showing the amount thereof and the amount applied to the mortgage debt, and the total valuation of the stock added every sixty days. (9) The mortgage was given in good faith for the full consideration of $7,000, received by the mortgagor from the mortgagee, and the same was not withheld from filing with intent to defraud. (10) The delay in filing the mortgage was due solely to mistake on plaintiff's part, he supposing that it was in fact filed about the time of its date, and not discovering the mistake till about the

date of the filing. Neither he nor any one with his knowl-
edge or consent instructed said city clerk not to index the
mortgage; nor did said clerk omit to index it because of
any request made by or on behalf of the plaintiff; nor was
there any agreement or understanding between plaintiff
and the mortgagor that the instrument should be withheld
from the files or not be indexed.    (11) The mortgagee
did not at any time agree with the mortgagor that it might
make sale of the stock in trade covered by the mortgage,
or convert raw material covered thereby into manufactured
products and dispose of the same without accounting there-
for to the mortgagee; neither was any agreement made at
any time between the parties permitting the mortgagor to
appropriate to its own use the proceeds of the mortgaged
property.    (12) The mortgage indebtedness became due Feb-
ruary 15, 1905, the amount being $7,000, with interest at
the rate of six per cent. per annum from February 15, 1904,
and no part thereof has been paid.

From such facts the court decided as matter of law that
the mortgage was void as to the stock in trade but was other-
wise valid; that the value of the property covered thereby
exceeded the amount of plaintiff's claim, with interest, and
that the same was wrongfully converted by defendants to
their use to his damage in the sum of $7,000, with interest
thereon at the rate of six per cent. per annum from the 15th
day of February, 1904.    Judgment was ordered accordingly
and was subsequently rendered.

For the appellants there was a brief by *Richmond, Jack-
man & Swansen,* and oral argument by *S. T. Swansen* and
*A. A. Gilbert.*

For the respondent there was a brief by *A. W. Kopp* and
*M. G. Jeffris,* attorneys, and *L. A. Avery,* of counsel, and oral
argument by *Mr. Kopp* and *Mr. Jeffris.*

MARSHALL, J.    Sec. 1775, Stats. (1898), provides that
a corporation may, "by a vote of a majority of the stock

given at any regular meeting or at any special meeting called for the purpose, sell and convey or authorize to be conveyed all or any portion of the property owned by it, whether real, personal or mixed; and may, by a similar vote, mortgage or lease any such property whenever it shall be necessary for its business purposes or the protection or benefit of its property held or used for the corporate business," etc.

The by-laws of the mortgagor empowered its board of directors to call a special meeting of stockholders "upon not less than ten days' notice in writing to all" of them, and authorized such a meeting upon the written request of the owners of one third of the capital stock, the secretary under the direction of the president to "notify all stockholders of the time and place set for the meeting, giving ten days' notice thereof in writing," no business, however, "other than is clearly set out in the call" to be considered. There was a special meeting of stockholders which acted favorably upon the question of giving the mortgage. The evidence, as it is claimed, does not show that the by-laws were substantially followed in calling the meeting, nor that it was regularly authorized by directors or stockholders. Upon that ground it is argued the trial court erred in not holding the mortgage to be void.

According to the findings there is no controversy on these points: The transaction between the mortgagor and the mortgagee was characterized, throughout, by the utmost good faith. The mortgagee supposed, when he parted with his money to the mortgagor, the latter had full authority to make the mortgage. It was given to obtain money to promote the legitimate objects of the corporation. The full sum mentioned in the mortgage was realized by the corporation and devoted to its legitimate business. Though nearly a year elapsed thereafter before appellant *Parkinson*, as trustee in bankruptcy, took possession of the mortgaged property, neither the corporation nor any of its officers, stockholders,

nor creditors questioned the validity of the mortgage. In view thereof, conceding all appellant claims as to irregularities in the giving of the mortgage, is it competent for the corporation, or any one representing it, or its creditors or stockholders, to impeach the validity of the instrument?

The foregoing stated proposition must be answered in the negative. Reason and substantially all authority here and elsewhere point that way, as the following will show:

A business corporation does not need express statutory authority to borrow money or execute securities in the ordinary way. Such authority exists by necessary implication from the general power conferred on it to do business. That is laid down by text-writers as elementary. The rule is stated in 5 Thomp. Corp. § 6131, thus:

"According to the American doctrine, every private corporation has an implied power to *borrow money* to enable it to carry out the purpose of its creation, and to issue the usual and appropriate *evidences of debt* therefor. This power carries with it, by the same reasonable implication, the power to *mortgage its property* to secure any debts which it may lawfully contract for the purposes of its creation; and such is the universal American doctrine, in the absence of statutory prohibitions."

The author mentions exceptions which are not material here. Generally speaking, a corporation, as to persons dealing with it in good faith, may give its obligations and secure the same by a mortgage as freely as a natural person.

It is a mistake to suppose that a mere statutory regulation of the manner of making a corporate contract such as the one in question is a prohibitory law rendering a good-faith executed transaction of the kind in disregard of it void. The statute does not contain any word of prohibition. It does not prescribe any punishment for the violation of it. It does not contain any declaration as to the effect upon the contract of any such violation. The violation of such a statute, at the most, is construed, ordinarily, as rendering the contract voidable, but not so as to allow one party to enjoy

the benefit of it and at the same time such party or some one acting in his right, in whole or in part, to impeach it, or any one interested to remain silent as to its validity to the prejudice of the innocent party and thereafter impeach its validity. *Laun v. Pac. Mut. Life Ins. Co.* 131 Wis. 555, 111 N. W. 660.

This court and most courts hold that an *ultra vires* contract, one not within the scope of the corporate authority to make under any circumstances, which is no longer executory and is not tainted by fraud or clearly prohibited by statute, or condemned by sound public policy, cannot be impeached by the corporation or any one representing it; that the only remedy is one on behalf of the state to punish the corporation for violating the law. *John V. Farwell Co. v. Wolf,* 96 Wis. 10, 70 N. W. 289, 71 N. W. 109; *Ledebuhr v. Wis. T. Co.* 112 Wis. 657, 88 N. W. 607; *Meating v. Tigerton L. Co.* 113 Wis. 379, 89 N. W. 152; *Security Nat. Bank v. St. Croix P. Co.* 117 Wis. 211, 94 N. W. 74.

The scope of the rule is stated in the *Ledebuhr Case* substantially thus: An executed contract made in good faith with a corporation will prevail over a by-law with which it may come in conflict, and if the organic act creating the corporation be violated in making the contract it will, if executed, yet prevail if it be not clearly prohibited by statute or contrary to sound public policy. When a corporation violates the law of its creation it commits an offense against the sovereignty of the state which can only punish it in the absence of some clear statutory method. That doctrine has become firmly entrenched in our jurisprudence and early cases not wholly in harmony with it must be considered as displaced by the later development of the law.

There is another complete answer, as it seems, to the contention of counsel. Such statutes as the one under consideration by the great weight of authority are regarded as having been enacted for the protection of stockholders. Neither the corporation nor any one representing it or its

creditors can efficiently invoke the statute against an executed contract, and delay on the part of stockholders while the corporation takes and enjoys the benefit of the transaction is regarded as an acquiescence precluding successful impeachment of the transaction.    The authorities on this are very numerous.    *Barrett & Co. v. Pollak Co.* 108 Ala. 390, 18 South. 615; *Thomas v. Citizens' H. R. Co.* 104 Ill. 462; *Beecher v. Marquette & P. R. M. Co.* 45 Mich. 103, 7 N. W. 695; *John W. Bishop & Co. v. Kent & S. Co.* 20 R. I. 680, 41 Atl. 255; *Boyce v. Montauk G. C. Co.* 37 W. Va. 73, 16 S. E. 501; *Paulding & Co. v. Chrome S. Co.* 94 N. Y. 334; *Rochester Sav. Bank v. Averell,* 96 N. Y. 467; *Hamilton T. Co. v. Clemes,* 163 N. Y. 423, 57 N. E. 614; *Beebe v. Richmond L., H. & P. Co.* 3 App. Div. 334, 38 N. Y. Supp. 395; *Hamilton T. Co. v. Clemes,* 17 App. Div. 152, 45 N. Y. Supp. 141; *Atlantic T. Co. v. Crystal W. Co.* 72 App. Div. 539, 76 N. Y. Supp. 647; *Campbell v. Argenta G. & S. M. Co.* 51 Fed. 1, 7; *Boston & M. C. C. & S. M. Co. v. Montana O. P. Co.* 89 Fed. 529; *G. V. B. M. Co. v. First Nat. Bank,* 95 Fed. 23; *In re N. Y. E. P. Co.* 110 Fed. 514.

In 2 Morawetz, Priv. Corp. (2d ed.) § 675, the doctrine of the cited cases is thus stated:

"Provisions in a charter or general incorporation law, requiring certain formalities to be observed in the corporate transactions, are not, as a rule, intended to have the force of imperative laws.    Such provisions will be treated merely as directions imposed for the benefit of the shareholders, unless a contrary intention is indicated by the legislature."

In *In re N. Y. E. P. Co., supra,* it was expressly held that a trustee in bankruptcy cannot impeach a mortgage given by the bankrupt upon the ground that it was not assented to by the stockholders in accordance with a statute such as the one in question, this language being used:

"We have not overlooked the point made by the trustee that the mortgage was invalid because the consent of the stockholders of the mortgagor had not been filed in the office

of the proper official, as required by the provisions of the stock corporation law. These provisions are for the protection of stockholders, and only stockholders can take advantage of any defects in complying with them."

If there were no other answer to counsel's contention the general principle would be sufficient that a corporation cannot retain the benefit of a good-faith contract not expressly forbidden by law or contrary to sound public policy and impeach its validity. That rule is tersely stated in *First Nat. Bank v. G. V. B. M. Co.* 89 Fed. 439, thus:

"Where a corporation has received the benefit of money borrowed on its mortgage, and the stockholders knew of it, and made no objection, within a reasonable time, to the lack of authority in the corporate officers to make the loan, neither the corporation, its stockholders, nor its creditors, can set up such want of authority in a suit on the mortgage."

The same doctrine is found in *Manhattan H. Co. v. Phalen,* 128 Pa. St. 110, 119, 18 Atl. 428, 429, in these words:

"The mortgagee knew that the corporation had power to borrow money upon bond and mortgage, and in the utmost good faith advanced his money to the corporation and accepted the mortgage as security for it. Upon its face the mortgage represented that it was duly authorized by the directors, and under the circumstances he was not bound to look beyond it. He had the right to assume as against the company that all matters of internal management had been complied with. The minutes of the corporation were not for his inspection, and if he had been allowed access to them would have sustained the recital in the mortgage. No director or stockholder has ever claimed that the mortgage was unauthorized, but, on the contrary, stockholders owning a clear majority of the stock issued by the corporation have recognized its validity in their bill for the appointment of a receiver. It is the receiver appointed upon their bill who is now seeking, against their protest, to destroy it. For aught that appears in his affidavit of defense, every director and stockholder of the company knew of the loan and mortgage and ratified both by acquiescence. As neither the corpora-

tion, its stockholders, nor its creditors can now allege a want of authority to make the loan and mortgage, the receiver cannot do so for them."

To the same effect are *Nat. Bank v. Matthews,* 98 U. S. 626; *Jones v. Guar. & Ind. Co.* 101 U. S. 622, and authorities generally which treat the subject.

From the foregoing the following general principles are considered to rule the question under discussion: In case of a statute or organic act of incorporation regulating the manner of giving corporate mortgages, which does not prohibit the making thereof without complying therewith, and expressly or by necessary implication declare one made in violation thereof void and a mortgage being given without such compliance, the mortgagee acting in good faith and the corporation receiving and enjoying and retaining the benefit of the same, neither it nor its creditors nor stockholders, nor any one representing them or any of them, in the absence of some statutory authorization, can successfully impeach the transaction. A mere statutory regulation as to consent of the stockholders of a corporation, as a condition of its mortgaging its property, is solely for the benefit of the stockholders.

We are unable to see any sufficient ground to disturb the finding of the trial court acquitting respondent of actual intent to defraud. It may well be that the mortgagor was allowed to remain in possession of the mortgaged property and to use some of the stock in trade as it had theretofore used the same until claimed by the mortgagee and there not have been any specific agreement to that effect, or in case of an agreement an intent to defraud. Such conduct unexplained is evidence of fraud, but not necessarily conclusive of it. True, it is so inconsistent with the property being held absolutely as security under the mortgage that, *prima facie,* it may well be regarded as fraudulent and as necessarily rendering the mortgage void, at least as to the property

so inconsistently used, but not, under all circumstances, because of any actual intent to injure other creditors of the mortgagor. A constructive intent to so injure is sufficient as to the property to which it relates, but whether such intent should work further injury to the mortgagee is quite another question.

Did the court below rightly conclude that though the mortgage was void, as to the stock in trade, for constructive fraud, in that the statute was not complied with regulating the manner in which chattel mortgage property of that sort may remain in possession of the mortgagor and be sold by him without affecting the validity of the mortgage, the instrument was valid as to the other property? The authorities elsewhere are in irreconcilable conflict in respect to that subject. Counsel for respondent suggest that this court in *Durr v. Wildish,* 108 Wis. 401, 404, 84 N. W. 437, took a position in the affirmative, while counsel for appellant claim that the decision is to the effect that a mortgage void in part is necessarily void in the whole. Neither side seems to be right. The mortgagee prevailed in the court below as to the property not included in the stock in trade. He claimed the right to such stock, because of his having taken possession of the same before the lien of any creditor or any person representing creditors intervened. On that he failed. Upon appeal to this court the judgment was affirmed. It will be seen that whether the mortgage, if void as to the stock in trade, was void as to the other property, was not involved, and that what was said as to its being void as to the property taken possession of as well as that which was sold by the mortgagor related wholly to the stock in trade. The court seems to be wholly free to adopt either side of the proposition which seems most in accord with justice and sound public policy.

The trend of decisions in recent years is rather against defeating by judicial policy a good-faith attempt, characterized by constructive fraud, to give and take a chattel mort-

gage. The supreme court of the United States in *Etheridge v. Sperry,* 139 U. S. 266, 11 Sup. Ct. 565, speaking on that subject said:

"Indeed, if this were an open question, we could not be blind to the fact that the tendency of this commercial age is towards increased facilities in the transfer of property, and to uphold such transfers so far as they are made in good faith. . . . The law now generally requires a record of all such instruments. . . . Why should a transaction like this be condemned, if made in good faith and to secure an honest debt? . . . The interests of the general public are not prejudiced by any such transaction between debtor and creditor. Indeed, they are rather promoted by any arrangement under which the mortgagor can continue in business, for in ninety-nine cases out of a hundred the taking of possession by a creditor results in closing the business, and turning the debtor out of employment. . . . Existing creditors may of course challenge the good faith of the transaction, but if they cannot disturb an absolute sale when made in good faith, why should they be permitted to challenge a conditional sale if made in like good faith? The fact that fraudulent relations are possible is hardly a sufficient reason for denouncing transactions which are not fraudulent. So, if the question were open, or a new one, unaffected by any settled law of the state, we incline to the opinion that the question is not one of law so much as it is one of fact and good faith."

It is by no means certain that the courts which have held a chattel mortgage wholly void in the circumstances of this case would do so now if permitted to deal with the matter originally. It is quite certain that the supreme court of the United States would not so hold, except as bound to do so by its rule as to following the decisions of state courts. No very good reason is assigned in any of the cases so holding, why a person should, in the absence of actual bad faith, lose the entire benefit of his security because of his permitting the use of part of it consisting of a distinct class of property, readily separable from the rest, in a way regarded as constructively fraudulent. Why should one, in such a mat-

ter, who is not guilty of any moral turpitude or of violating any written law creating a forfeiture, be punished in excess of the utmost possible injury that could occur to others from the technical wrong?

Courts uniformly construe written laws, where construction is permissible, as to wrongs merely *malum prohibitum* so as to minimize rather than to exaggerate their severity. Certainly it would seem that the same public policy should be the guide in establishing mere judicial rules for punishment such as the one to meet cases of the sort in hand.

We could make but little headway in arriving at the real right of the matter under discussion by reviewing the cases on each side of the controversy. We have examined them with care to the end that some line of harmony might be discovered, but without success. It seems that the early cases went upon the theory that permission to use the mortgaged property inconsistent with its being absolutely held as security was conclusive evidence of actual fraud, and in most of the cases that followed, the distinction between such fraud and constructive fraud and between *prima facie* evidence of actual fraud and conclusive evidence thereof was overlooked. The real judicial thought is embodied in the following words from the opinion of WOODRUFF, J., in *Russell v. Winne*, 37 N. Y. 591:

"If a mortgage be given with the fraudulent intent to cover up and conceal from creditors a portion of the debtor's property, it is altogether void, notwithstanding it also includes land or other property in relation to which there is a *bona fide* intent to convey it as security for an honest debt, and no other purpose and intent."

In Herman, Chat. Mortg. § 104, the doctrine here contended for by appellant's counsel is declared, but it is clear that the author did not make any extended study of the subject, because his language indicates that he had in mind only cases of actual intent to defraud. No reference was made to

the numerous authorities on the other side of the proposition.

In Wait, Fraud. Conv. (3d ed.) § 194, the doctrine is announced that a mortgage void in part is totally void, with the observation that it only applies to cases of actual fraud and that "where the fraud is constructive only the court will uphold the valid provisions of the instrument if it can be done without defeating the general intent."

In Jones, Chat. Mortg. (4th ed.) §§ 350, 351, there is evidence of a more extended study of the subject than in the other text-books referred to. The author cites the authorities then in hand and comments thus:

"The rule having the best support is that a mortgage not actually fraudulent may be valid in part and void in part. . . . A mortgage covering a stock of goods and fixtures, although constructively void as to the stock of goods by reason of the mortgagor's right to continue in possession and sell them, is held binding upon the fixtures, as to which the power of sale did not apply."

Among the citations in support of the text quoted is *In re Kirkbride,* 5 Dill. 116, Fed. Cas. No. 7,839, where Judge DILLON, referring to decisions of the supreme court of Missouri, said:

"I am entirely satisfied that these cases show that when the conveyance is not actually fraudulent, and when the power of disposition is retained as to part of the property, and as to part is not retained, it is constructively fraudulent only as to that portion of the property as to which the power of disposition exists."

The supreme court of Alabama, in *Hayes v. Westcott,* 91 Ala. 143, 8 South. 337, in discussing the matter said this:

"The authorities on the point are numerous, and in irreconcilable conflict. The courts of last resort in three or four states have held, without qualification, that the infirmity as to one item of property infects and vitiates the entire grant. . . . On the other hand, it has been ruled by the courts of

final jurisdiction in several other states, by intermediate federal courts, and by the supreme court of the United States, that such a conveyance in the absence . . . of actual fraud is bad to the extent only of the property out of which a benefit is reserved to, or a trust created to the use of, the grantor, and good as to that part of its subject matter with respect to which no benefit is reserved and no trust is created. No attempt will be made to harmonize these variant adjudications. It may be well to remark, however, that the conclusion, reached in not a few of the cases referred to, . . . might have been put upon, and justified by, the existence of actual fraud in the transaction. . . . This is notably true of West Virginia and Mississippi cases."

The court adopted the doctrine that in the absence of actual fraud a mortgage may be void in the circumstances of this case as to the stock in trade and good as to the other property.

Without further discussion it is the opinion of this court that the effect of constructive fraud should not be extended so as to render a mortgage covering two distinct classes of property wholly void merely because of its being void as to one of them. We are unable to see any wrong in such a transaction; one where there is an entire absence of any actual intent to commit a wrong, that should, by force of mere judicial policy, be so severely punished as by taking from the mortgagee, not only the property he did not intend to absolutely hold as security, but the other property also.

It may well be conceded, as contended by counsel for appellant, that a mortgage or other conveyance of property with mutual intent to defraud the creditors of the mortgagor, which could be attacked by any such creditor, or in fraud of the bankrupt law, can be successfully impeached by the trustee in bankruptcy of the mortgagor. To that effect various provisions of the bankrupt law, *Mueller v. Bruss,* 112 Wis. 406, 88 N. W. 229, and other authorities are cited to our attention. They do not seem to apply to the situation in

hand. It is not contended here that there was a conveyance in fraud of the bankrupt act and the claimed intent to defraud creditors is negatived by the findings, which we do not feel warranted on the evidence in disturbing, as before indicated.

There was delay of about four months in filing the chattel mortgage, but it was filed some six months before the adjudication in bankruptcy, and the delay was explained to the satisfaction of the trial court consistently with good faith. Respondent testified that he delivered the paper to his brother on the day it was made with directions to file it, and that he supposed such directions were followed till about the time it was in fact filed. The brother corroborated this and testified that it was merely through inadvertence he failed to do as directed; that the mortgage got mixed up with other papers and was forgotten till about the day it was filed.

There was no evidence of an agreement that the mortgage should not be filed and the idea that there was one was negatived by positive evidence. The instrument was not indexed, which circumstance was explained by the clerk as having happened because he was requested not to publish the matter, but he was admonished by respondent that he was not wanted to do anything wrong. It seems that the court, on the whole, was justified in finding there was no purpose on respondent's part to have the clerk omit to perform any part of his official duty, or withhold knowledge of the mortgage from any one desiring information as to the condition of the mortgagor's property. When the mortgage was delivered to him for filing it was to all intents and purposes filed whether he neglected his duty in the matter or not. *Marlet v. Hinman*, 77 Wis. 136, 45 N. W. 953; *Bailey v. Costello*, 94 Wis. 87, 91, 68 N. W. 663.

The foregoing leaves no question that requires extended discussion. The transaction involved not being characterized by any actual fraud, the trustee in bankruptcy did not ac-

quire any better right to impeach the chattel mortgage than the creditors of the mortgagor had at the time of the adjudication in bankruptcy. No creditor then had such right merely because the indebtedness as to him accrued before the mortgage was filed, since the filing antedated such time. The decisions in this court and the federal courts are in harmony on that point. *Ullman v. Duncan,* 78 Wis. 213, 47 N. W. 266; *Nix v. Wiswell,* 84 Wis. 334, 340, 54 N. W. 620; *In re N. Y. E. P. Co.* 110 Fed. 514.

*By the Court.*—The judgment is affirmed.