KANNEBERG and another, Appellants, vs. EVANGELICAL CREED CONGREGATION, Respondent.

*April 11—October 3, 1911.*

*Corporations:* Ultra vires: *Suit by minority to restrain acts of majority: Employment of attorneys to defend: Liability of corporation for their services: Power of officers: Executed contracts: Estoppel: Consideration: Religious. societies.*

1. If a corporation, by action of a majority of its members which would be binding in a matter within the corporate power, in good faith decides a disputed question, and the minority bring suit to restrain the corporation and its officers from carrying such decision into effect upon the ground that it would be a usurpation, and the majority in good faith take action, valid in form, by which the corporation assumes the defense and authorizes the employment of attorneys to conduct the same, the attorneys so employed have a valid claim against the corporation for the value of their services, even though the litigation be determined in favor of the minority.

2. The fact that the acts which are attacked and which the attorneys are employed by the corporation to defend are finally determined to be *ultra vires*, does not render the employment of such attorneys *ultra vires* and their services chargeable only to the officers individually through whom they were employed.

3. The managing officers of a corporation have, without special authorization, the power to employ counsel to defend an action against it when they reasonably and honestly believe the interests of the corporation require it.

4. Where a contract of employment by a corporation, made in good faith, is fully executed by the other party, the corporation receiving the services as contracted for, the corporation cannot successfully plead *ultra vires* to avoid performance on its part, even if the contract be *ultra vires*, provided it be not tainted by fraud or prohibited by statute or condemned by sound public policy.

5. The duty of a corporation to pay for services rendered for it under an *ultra vires* contract of employment does not depend upon the corporation being enriched or benefited at the expense of the party so dealing with it in good faith, it being sufficient that the other party acted upon the faith of the contract to his disadvantage.

6. The principle which requires other corporations to perform their contracts, though *ultra vires*, which have been executed by the other parties thereto, applies equally to religious corporations in their business transactions, even though its application may work hardship.

WINSLOW, C. J., and TIMLIN, J., dissent.

APPEAL from a judgment of the circuit court for Milwaukee county: GEORGE GRIMM, Judge.    *Reversed.*

Action on contract to recover compensation for services rendered defendant.

The complaint was in the usual form. The amount claimed was $3,869.25 as a balance on account for services as attorneys and counselors at law and expenses. Defendant pleaded as follows, in effect: The services were rendered individual members of the corporation in an action brought by other members, to prevent the former from, as alleged, diverting defendant's property from the legitimate purposes of the corporation. The action of the church congregation in employing, or attempting to employ, plaintiffs, was had on Sunday when less than a majority of the membership was present. Defendants in such action, wrongfully and in bad faith, defended and in so doing employed plaintiffs to that end and to create such corporate liabilities as would deprive the adverse members of the corporation of any benefit from the litigation in case of their being, in form, successful. It was judicially determined that the conduct complained of in

such action was wholly illegal and void. The services were in fact rendered to trustees of defendant as individuals to sustain them in usurpatious proceedings.

The trial was without a jury, resulting in a decision, so far as need be stated here, to this effect:

(1) The action in which the services for which compensation is claimed were rendered involved property of defendant and it was determined that the defendants therein were attempting to divert such property to a denominational use, inconsistent with the trust for which it was acquired by the congregation and held by the trustees.

(2) Such action was necessary to prevent such trustees from wrongfully changing the corporate name and the faith which it represented, taught, and for which it was maintained by the congregation, so such corporation would stand for a materially different faith than that for which it was organized.

(3) Plaintiffs in such action were successful, it being held that the conduct of defendants therein was wholly without authority.

(4) The minister and a majority of the congregation supported such defendants and by a majority vote authorized, so far as that could be done, the defending trustees to employ plaintiffs herein, which they did. Pursuant thereto the services in question were rendered and the disputed expenses incurred.

(5) The reasonable value of such services, including the expenses, less payments made, is $2,548.79.

(6) Plaintiffs really served the trustees, and such members of the congregation as participated in the wrongful course aforesaid, as individuals, not the corporation, though the employment was ostensibly in the latter's behalf.

(7) Neither the congregation nor its trustees possessed power to employ attorneys to aid in furthering an attempt to divert its property from the legitimate use thereof.

(8) To allow judgment in plaintiffs' favor would par-
tially accomplish, by indirection, that which was held could
not legally be done.

(9) The litigation grew out of an honest difference of
opinion between the controlling membership of the church
corporation and the minority, with reference to the construc-
tion of the corporate constitution, and persistence of the ma-
jority in carrying out their ideas without first obtaining ju-
dicial or other authoritative construction; thus rendering it
necessary for the minority to seek judicial assistance to pre-
vent usurpation.   The resulting litigation was not a friendly
contest but was resisted by the majority with determination
to prevail over the minority.

Upon such facts the court decided as matter of law that
plaintiffs had no legitimate claim against the corporation for
services and expenses.   Judgment was therefore rendered
dismissing the cause with costs.

For the appellants there was a brief by *Frank H. Hanna-
ford,* and oral argument by *Hubert O. Wolfe.*

For the respondent there was a brief by *Boden & Beuscher,*
and oral argument by *F. X. Boden.*

The following opinions were filed May 2, 1911:

MARSHALL, J.   The question presented for decision is
this: If a corporation—by a majority of its members acting
at a time and in a manner which would be binding in a mat-
ter within its corporate power—in good faith decides a sub-
ject in controversy, and a minority of members, acting in like
good faith, resort to judicial proceedings against the officers
and the corporation to prevent such determination from being
effectuated upon the ground of its being a threatened usurpa-
tion, and the majority, in good faith believing in the integ-
rity of their position, take corporate action, valid in form, by
which the organization assumes the defense, authorizing such
officers to employ attorneys to appear accordingly and conduct

such defense, and the litigation goes on, both sides acting in good faith, to a final determination in favor of the minority, have the attorneys so employed by the corporation any valid claim against it?

The trial court answered the question in the negative, the idea being, seemingly, that if one takes employment from a corporation in respect to any matter—in good faith thought by its dominant membership and executive officers, charged with the duty of carrying on its affairs, to be within the scope of the corporate authority—yet he runs the chance of being denied compensation for his labor, if the disputable matter in respect to such authority be decided in the negative. If there be such a rule, applicable so broadly as the trial court supposed, there is a serious peril in working for corporate organizations which, we may safely say, is not appreciated by the great mass of mankind who are interested in or serve such artificial entities.

There are some principles to be taken into account in deciding the question presented which are plain, simple, and so familiar that discussion of them and support thereof by reference to authorities are unnecessary. They need only be briefly mentioned.

The rule is common that a corporation has no power except such as is expressly or impliedly given by the charter; that as to any act outside the scope thereof, though *ultra vires,* the state only can interfere, or some party actually injuriously affected without his own fault, and no one can interfere to the prejudice of a person who has performed, in good faith, a contract with the corporation, in respect to such contract, unless it is contrary to public policy or prohibited by statute. A corporation has, inherently, by necessary implication, the right, within the scope of its powers, to be governed by its dominant membership or representatives and, in case of necessity, to defend against judicial interference in respect to the matter, and also authority to incur all the reasonable expense to that

end, such as that for counsel and other ordinary expenses of litigation.

What is within the scope of corporate power is ordinarily an administrative question, determinable, primarily, by the governing authority of the organization. If such authority reaches a wrong conclusion, so far as concerns contractual matters affecting third persons acting in good faith and reasonably, the corporation is bound within the limitations aforesaid.

Whenever the right of a corporation, or its duly constituted representatives, to do a particular thing proposed to be done, is challenged by an opposing minority of its members or representatives, acting reasonably and honestly, such majority and officers have the moral and legal right to stand by their judgment in the matter, and it is their duty to the corporation to do so if they reasonably and in good faith suppose the interests of the organization require it, and if that brings upon the corporation and its governing officers, or the major portion of them, an efficient challenge to defend in court, it is their right and duty to respond to the attack. Such defense is unavoidable unless the dominating membership and representatives, whenever their authority may be challenged by the minority, submit to the latter.

Can there be any fair controversy about the foregoing? It must follow, that when the corporation and its officers were attacked by the action in which the services in question were rendered the right to defend existed, and the duty also, since it seems there was a fair difference of opinion, and defendants in such action firmly believed in the right of their position. The right to defend, as indicated, included the right to employ attorneys to conduct the defense. The right to employ counsel necessarily carried with it the duty to pay counsel for their services, regardless of the outcome of the litigation. Such right, all acting in good faith, quite plainly did not depend upon who was right in the controversy.

How can it be said that whether the corporation and its officers were right or wrong rules the question of whether the services appellants in good faith rendered must be paid for or not? In any event, under the circumstances, the acts of usurpation perpetrated or threatened did not include the contract with counsel. There was no usurpation about that. It is the undoubted right of a corporation and of its managing officers, acting in good faith, to employ counsel by whom to respond to a challenge to judicial combat. That right gives character to the claim of appellants, not the result of the litigation. That seems to be so obvious on principle, it is not to be wondered at that counsel have not been able to cite instances to the court where the subject has been directly involved and decided. The indications are that the logic of such situations furnishes little or no room for controversy and, therefore, no one has ventured to raise the question presented now and persist to a determination of it in a court of last resort.

We do not overlook the fact that the trial court found the plaintiffs' services were rendered in fact for the trustees of the corporation as individuals. That was a mere conclusion, supposed to follow, necessarily, from the *ultra vires* nature of the acts sought to be prevented or corrected. The record plainly shows that the corporation, through its trustees and by express authority of its members, employed appellants; that the contract of employment was fully executed on their part to their damage in the amount they claim, in case they cannot recover, and to the benefit of the corporation in the sense that it received the services rendered and needed under the circumstances. Whether it was pecuniarily enriched or not, is beside the case. Moreover, the managing officers of a corporation have a right, as before indicated, to employ counsel to stand for it when challenged in court without any special authorization. 4 Thompson, Corp. § 4866.

From the last foregoing it seems plaintiffs are entitled to

recover, as counsel contend, even if the contract of employment be *ultra vires*. There was no bad faith at any point. The contract was fully executed, respondent receiving the services as stated. In such circumstances a corporation cannot successfully plead *ultra vires* to avoid performance on its part. *John V. Farwell Co. v. Wolf,* 96 Wis. 10, 70 N. W. 289, 71 N. W. 109; *McElroy v. Minnesota P. H. Co.* 96 Wis. 317, 71 N. W. 652; *Security Nat. Bank v. St. Croix P. Co.* 117 Wis. 211, 94 N. W. 74; *Eastman v. Parkinson,* 133 Wis. 375, 113 N. W. 649.

The doctrine as found in the above and many other decisions in this and other courts is thus stated in *Eastman v. Parkinson,* 133 Wis. 375, 381, 113 N. W. 649:

"An *ultra vires* contract, one not within the scope of the corporate authority to make under any circumstances, which is no longer executory and is not tainted by fraud or clearly prohibited by statute, or condemned by sound public policy, cannot be impeached by the corporation or any one representing it."

The court in this case, as we have seen, acquitted plaintiffs of everything in the nature of bad faith. There is no express statute prohibiting a corporation from employing attorneys to conduct its defense, or the defense of its officers, in the pursuit of what is honestly deemed to be within the corporate authority, nor any rule of sound public policy condemning such employment.

We are at a loss to see why the facts of this case, as found by the trial court, do not fall clearly within the doctrine stated. It is based on equitable estoppel. The idea is that, as between the aggregate stockholders of a corporation, and a person under contract with the organization, acting by its officers regularly chosen and held out to the world as having authority to represent it, the stockholders through the corporation should lose rather than such person. The thought should not be indulged in that such equitable rule is based on

the circumstance of the corporation being enriched at the ex-
pense of the person dealing with it in good faith.   It is the
loss which such person would otherwise suffer which renders
the rule active.   It applies to prevent such loss even though
the services to the corporation prove to have been to its disad-
vantage.   As stated. in 5 Thompson on Corporations, at
sec. 6017:

"The principle, properly understood and applied, extends
to every case where the *consideration* of the contract has
passed to the corporation from the other contracting party,
which consideration may, on well understood principles, con-
sist either of a benefit to the corporation or of a prejudice or
disadvantage to the other contracting party.   It is, therefore,
not strictly necessary to the proper application of the prin-
ciple that the corporation has received a benefit from the
contract, but it is sufficient that the other party has acted on
the faith of it to his disadvantage."

That doctrine is new comparatively, but it has been so gen-
erally adopted as to be properly considered a part of the com-
mon law of this country.   The doctrine of *ultra vires,* as
formerly applied to corporate transactions, proved, in time,
to be unadaptable to the new conditions created by the widely
adopted method of doing almost all kinds of business by unit-
ing a few or a large number of individuals into a single arti-
ficial person.   Under present conditions, the ancient doctrine
of *ultra vires* and application thereof to transactions between
corporations and those with which they deal, would be pro-
ductive of incalculable injustice.

It may be that the modern doctrine is productive of in-
justice now and then, but courts cannot recognize one class
or particular corporation to be subject to it and others not.
It applies to religious corporations in their business trans-
actions, the same as to banking or manufacturing corpora-
tions.   There is no difference.   It also applies the same when
the corporation is small and the amount involved is large, as
where the corporation is so large and the amount involved so

small that the enforcement of the contract would have no appreciable pecuniary effect upon the organization. Absolute equality before the law applies to corporations the same as individuals.

True, this case seems to be one of great hardship—the taking of a balance to make over $3,000, from a small corporation,—a religious body, probably having very little, if any, property, except that used in the religious services of the congregation, moreover, being a moderate collection of individuals, we may well suppose only in moderate circumstances, as a rule; but that is a misfortune which the courts cannot take notice of for the purpose of turning a well settled rule of law aside or make a new one. Cases of great hardship too often tend to influence the bending of legal principles to satisfy the facts of a particular situation so as to effect a supposed just result, giving judicial administration the cast of mere arbitration. We cannot escape the conclusion that the appellants have a legal right to recover for their services, leaving the corporation to deal with its officers if they committed any remediable wrong to it.

*By the Court.*—The judgment is reversed, and the cause remanded for judgment in favor of plaintiffs for the balance of their account as found by the trial court, with interest and costs.

Winslow, C. J., dissents.

Timlin, J.   I acquiesced in the decisions *Marien v. Evangelical Creed Cong.* 132 Wis. 650, 113 N. W. 66, and 140 Wis. 31, 121 N. W. 604, deferring largely to the judgment of my associates upon the questions of creed, with which I was quite unfamiliar. In those cases it was decided that the plaintiffs were right, and that the other faction, which included the majority of the members of the congregation, who therefore had control of the corporate offices and the church

property, were in the wrong and engaged in attempting to
divert the church property from the uses for which it had
been acquired to the inconsistent and antagonistic uses of an
Evangelical Lutheran church.   I think we should stand by
those decisions.

From this viewpoint the question here presented is: Can
this majority, frustrated by these decisions in their attempt
to do an act *ultra vires* the corporation, nevertheless charge
the corporate property with the fees of their lawyers earned
in attempting to justify and uphold these *ultra vires* acts?
·Can they do so by employing these lawyers for and in the
name of the corporation?   A kindred question was exam-
ined apparently with thoroughness in *McCourt v. Singers-
Bigger,* 145 Fed. 103.   There certain shareholders prose-
·cuted for the corporation to recover from defendants funds of
the corporation and prevailed.   They asked for an allow-
:ance and got it upon the authority of *Trustees v. Greenough,*
105 U. S. 527.   In the case cited from the Federal Reporter
the court said:

"The same reasons which justify an allowance out of the
fund in favor of complainant for expenses incurred in re-
storing it require us to approve of the disallowance of such
items in favor of the defendants. . . . No authorities are
·cited by counsel or found by us sustaining defendants' claim,
and we certainly shall not be the first to reward obstruction-
ists out of a restored fund in proceedings necessarily and vig-
·orously prosecuted to regain that fund."

Even if a majority of the stockholders in a stock corpora-
tion consent to ratify an illegal use of its funds their assent
would not bind a dissenting minority.   *Von Arnim v. Am.
T. Works,* 188 Mass. 515, 74 N. E. 680.   Directors and offi-
·cers are personally liable for *ultra vires* acts.   2 Cook, Corp.
(6th ed.) § 682.   When the majority enters into litigation
with the minority, costs are not to be paid by the majority
out of the corporate funds.   *Pickering v. Stephenson,* L. R.
14 Eq. Cas. 322.   See, also, *Wickersham v. Crittenden,* 106

Cal. 327, 39 Pac. 602. I think it conflicts with these cases to hold that the majority of members who have charge of the corporate assets and affairs may bind the corporation by the employment of attorneys to act in the corporate name to uphold the wrongful acts of such majority. It is not a corporate purpose. The result of deciding the doctrinal point in favor of one faction and permitting the other and heretical faction to charge the corporation with the fees of its attorneys, in effect gives the property, over which the factions are contending, to the lawyers. This is a sort of equity I do not understand. I think the decision of this case is opposed to principle and without precedent. I do not think the law cited with reference to *ultra vires* contracts and the disability of the corporation to repudiate the same has any relevancy to the questions here presented.

A motion for a rehearing was denied October 3, 1911.