(17 App. Div. 152.)

HAMILTON TRUST CO. v. CLEMES et al.

(Supreme Court, Appellate Division, Third Department.  May 5, 1897.)

1. CORPORATIONS—MORTGAGES—IRREGULAR EXECUTION.

A mortgage given to secure a bona fide debt is not invalid as between the mortgagee and junior judgment creditors of the mortgagor because of irregularities in the authorization and execution.

2. SAME—CONSENT OF STOCKHOLDERS.

The original stockholders, in order to consent to the execution of a mortgage, are not required to have their holdings entered on the stock book by Laws 1892, c. 688 (Stock Corp. Law) § 29, providing that "no transfer of stock shall be valid as against the corporation, its stockholders and creditors, for any purpose, except to render the transferee liable for the debts of the corporation * * * until it shall have been entered in such book."

3. SAME—POWER OF DIRECTORS DE FACTO.

Directors de facto who are recognized by the corporation and the stockholders may issue a valid mortgage.

Appeal from special term, Warren county.

Action by the Hamilton Trust Company, as trustee, against G. Hector Clemes and others, to foreclose a mortgage. There was a judgment in favor of plaintiff, and defendants G. Hector Clemes, George H. Leggett, Charles B. Peddie, the Van Heusen-Charles Company, and Julius Ellinger & Co. appeal. Affirmed.

The defendant the Horicon Improvement Company, the mortgagor, made no defense. The appellants are judgment creditors of the mortgagor, with judgments junior to the mortgage. Their defenses insisted upon here were: (1) That the Horicon Improvement Company never authorized the execution of the mortgage or the execution or delivery of its bonds; (2) that the mortgage exceeded the amount of the paid-up capital stock of the mortgagor company, and more than equaled two-thirds of the value of the corporate property of the company at the time the bonds secured by the mortgage were issued, thereby violating section 2 of the stock corporation law,—chapter 688, Laws 1892; (3) that the consent of stockholders owning at least two-thirds of the capital stock to the issue of the mortgage was never duly given in writing, and filed and recorded; (4) that the persons claiming to act as directors of the mortgagor company in the giving of the mortgage and the issue of its bonds were not, in law, such directors; (5) that the mortgage and bonds were executed and delivered with the intent to cheat and defraud the appellants. The trial court found generally against the appellants upon all these defenses.

The facts as they appeared upon the evidence were as follows: In January, 1895, Walter M. Peck was the owner of the Lake House property, worth about $30,000, at Lake George, and held a contract giving him the option of purchasing the Prospect Mountain property, worth about $4,000. He conceived the idea of constructing a railroad from the foot of the mountain to its summit, erecting a clubhouse there and additional cottages upon the Lake House grounds. Peck and his brother, Harry M. Peck, and one Colvin, January 7, 1895, made and executed the certificate of the corporation known as the "Horicon Improvement Company," "for the purpose of building and maintaining hotels, cottages, and the establishing, building, and maintaining means of conveyance to and between the same, by cable cars or otherwise." These persons were named as directors for the first year. The capital stock was fixed at $150,000, divided into 1,500 shares, of which Walter M. Peck agreed to take

1,400 shares, his brother 75 shares, and Colvin 25 shares. The certificate of incorporation was filed in the Warren county clerk's office, January 11, 1895. On January 9, 1895, these three persons met as the board of directors of the Horicon Improvement Company, and elected Walter M. Peck president, and other officers. They then adopted a resolution authorizing the president to execute a contract with the Otis Engineering & Construction Company for the construction by the latter company of a cable road up Prospect Mountain, and for a loan of $30,000 for other constructions and improvements upon the property; the Horicon Company to pay the Otis Company therefor $50,000 in its stock, and $150,000 of its first mortgage bonds, thereafter to be issued. On January 15, 1895, the two companies entered into such a contract in writing, and thereupon the Otis Company entered upon its execution, and fully performed it on or before June 1, 1895, expending for the purpose, including advances in money to the Horicon Improvement Company, nearly $200,000. On February 16, 1895, at a meeting of the stockholders of the Horicon Company, namely, the original incorporators, duly called for the purpose, a resolution was adopted to increase the number of directors of the company to seven; and thereupon, by a vote of the stockholders holding 1,000 shares of the stock, William D. Baldwin and three others, who were also shareholders in the Otis Company, were elected directors. April 24, 1895, the 500 shares of the capital stock of the Horicon Improvement Company, called for by the contract, were issued to the Otis Company. The same day, 1,000 shares of the stock were issued to Walter M. Peck in payment for the Lake House and Prospect Mountain properties, including the rights of way, wharfage and riparian rights, and all personal property upon the premises, which Peck thereupon conveyed, or caused to be conveyed, to the Horicon Improvement Company. May 3, 1895, the consent in writing of Walter M. Peck, as the holder of 1,000 shares of the Horicon Improvement Company, and of the Otis Engineering & Construction Company, as the holder of the 500 other shares of the stock, was executed, and on May 6, 1895, was filed in the Warren county clerk's office. Also, on May 3d, at a meeting of the enlarged board of directors of the Horicon Improvement Company, a resolution was adopted authorizing the issue of the bonds and mortgage in suit; and the same were issued, the mortgage being recorded June 12, 1895, and the bonds being delivered to the Otis Company July 28, 1895, after the full completion of its contract. They were delivered by the plaintiff upon the written direction of the Horicon Improvement Company, and the delivery afterwards ratified in writing by all the stockholders of the Horicon Improvement Company.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Charles H. Sturges, for appellants.
Edwin C. Low, for respondent.

LANDON, J. The findings of the trial judge in effect negative the charge of fraud in the issue of the mortgage and the bonds. The evidence does not support the charge of fraud, but justifies the finding that, as between mortgagor and mortgagee and the bondholders, the mortgage and bonds were honestly issued as security for the payment of honest obligations. It seems to be elementary justice that a contractor who has added his own property, money, and labor, of more than $150,000 in amount, to the real estate of another, under a contract with him that he should be secured by a mortgage upon such real estate, ought to have the mortgage, and that it should be a good one. Whatever irregularities, if any, attended the authorization, execution, and the issue of the mortgage and bonds, the solution of this appeal, which is in effect between the bondholders and junior judgment creditors, must depend upon the answer to the question, whether, as against the mortgagor, the mortgage and bonds are valid securities;

for if they are valid between the parties to them, in the absence of fraud, they are valid against subsequent lienors. The liens of the judgment creditors are subsequent in time, and not superior in equity; and in such case equity follows the law, and the prior in time is prior in right. A creditor holds under and through his debtor, and, in the absence of fraud, is concluded by all the valid acts and assurances of the latter. Candee v. Lord, 2 N. Y. 275; Carpenter v. Osborn, 102 N. Y. 552, 7 N. E. 823.

The defenses urged by the appellants rest upon alleged nonobservance of some of the statutory conditions precedent to the valid execution of a corporate mortgage. It is obvious that these requirements were not prescribed in order to enable a corporation to acquire money and property upon the faith of its mortgage, and then repudiate the mortgage, but to protect the corporation, its stockholders, and, in proper cases, its creditors, against the improvident and wrongful acts of the officers of the corporation. Bank v. Jones, 7 Misc. Rep. 207, 210, 27 N. Y. Supp. 677, affirmed 90 Hun, 605, 35 N. Y. Supp. 1111; Paulding v. Steel Co., 94 N. Y. 334; Bank v. Averell, 96 N. Y. 467; Lord v. Gas Co., 99 N. Y. 547, 2 N. E. 909; Welch v. Bank, 122 N. Y. 177–187, 25 N. E. 269; Sugar Co. v. Whitin, 69 N. Y. 328; Beebe v. Power Co., 3 App. Div. 334, 38 N. Y. Supp. 395. If, however, the instrument alleged to be a mortgage is from any defect not the act of the Horicon Improvement Company, then the plaintiff has no case. The answer of the appellants admits the due incorporation of the Horicon Improvement Company, and thus its capacity to make a mortgage within the statutory limitations, and by observing the statutory and legal requisites. One of these requisites is that the written consent of the stockholders owning two-thirds of its capital stock shall first be given and filed, and the appellants allege that this was not done, because the stockholders who gave such consent were not stockholders of record upon such a stock book as section 29 of the stock corporation law requires a corporation to keep. The corporation had no such book. It simply had the original certificate of incorporation, or a copy of it, showing the original subscription to the stock, the minutes of its directors showing to whom stock had been directed to be issued, and a certificate book with stubs showing the then-existing stockholders.

Section 29 provides that "no transfer of stock shall be valid as against the corporation, its stockholders and creditors, for any purpose, except to render the transferee liable for the debts of the corporation according to the provisions of this chapter, until it shall have been entered in such book." The words "and creditors" were inserted in the revision in 1890. Without attempting to anticipate the full scope of these added words, it seems clear that they do mean that, when the creditor is pursuing his remedies either against stockholder, director, or corporation, he has the right to rely upon the evidence which this stock book affords as to the ownership of the stock; and perhaps if, by other evidence, he can establish such ownership, no transfer will prejudice him, unless it is entered therein. But they do not mean that the original subscriber must have his holding entered in this book, for there must be an owner before there can be a transfer. See Davidson v. Gaslight Co., 99 N. Y. 558, 2 N. E. 892. Giving

to the words their literal force, and Walter M. Peck, as the original subscriber to 1,400 shares of stock, and, at the time of giving the consent, the owner of 1,000 shares, held just two-thirds of the capital stock, which he had never transferred; and his consent alone satisfied the requirements of the statute, even if the Otis Company was incapable of giving consent. Welch v. Bank, supra. A more satisfactory answer to the objection is that the corporation is estopped from raising the objection against its mortgagee so long as it holds the benefit of the property it acquired under the mortgage; and these judgment creditors, in the absence of fraud, stand subsequent to the mortgage. If the corporation wishes to repudiate the mortgage, it should restore the benefits it has received under it. Duncomb v. Railroad Co., 84 N. Y. 190.

It is urged that the four persons who were added as directors at the meeting held the 16th of February, 1895, were not stockholders, and therefore were ineligible as directors. These persons, when made directors, were not actual holders of stock, although the understanding which was soon after carried out was that they should become stockholders. They were, however, directors de facto, if not de jure. They were not usurpers, but were chosen by the original incorporators, whose subscriptions to the stock were assets of the corporation, and who, in consequence, rightfully were acting as stockholders. Wheeler v. Millar, 90 N. Y. 353. The stockholders subsequently ratified the issue of the bonds secured by the mortgage, and thus ratified the acts of the directors in issuing it. Welch v. Bank, 122 N. Y. 177, 25 N. E. 269. Directors de facto, recognized by the corporation and stockholders, may issue a valid mortgage. Water Co. v. De Kay, 36 N. J. Eq. 548.

As to the amount of the mortgage, the evidence shows that $150,000 did not more than equal two-thirds of the value of the corporate property, $225,000, at the time the bonds were issued. The Otis Company had expended, or caused to be expended, about $200,000 upon the property; and the evidence will justify the finding that the property, at the time the bonds were issued, apart from the improvement, was worth more than $25,000. Subsequent experience may or may not justify the expectations of the promoters of this enterprise. The mortgagor and mortgagee undoubtedly at the time believed the property to be worth all that it had cost, and more; and neither is in a condition to reproach the other with an overestimate of value, since both justified their judgment by embarking their capital upon it. Our conclusion is that the evidence does not impeach the validity of the mortgage against the bondholders, and therefore the plaintiff was entitled to judgment. There are no other objections that require mention.

Judgment affirmed, with costs. All concur.