HAMILTON TRUST COMPANY, as Trustee, Respondent, *v.* G. HECTOR CLEMES et al., Appellants, Impleaded with Others.

163    423
75 AD² 93

1. CORPORATIONS — DIRECTORS NAMED IN CERTIFICATE OF INCORPORATION. The original directors named in a certificate of incorporation under the Business Corporation Law (L. 1890, ch. 567; L. 1892, ch. 691), become directors by virtue of the direct command of the statute, not through an election by stockholders, and are clothed with all the powers of the corporation and authorized to make any contract in its behalf that it is capable of making.

2. MORTGAGE — VALIDITY IN EQUITY AS AGAINST JUNIOR JUDGMENT CREDITORS. A mortgage given by a corporation in an effort to perform a legal obligation to give a first mortgage upon its assets under a contract entered into by such directors with another corporation, which is fully performed on its part, is valid in equity as against junior judgment creditors, even upon the assumption that there was a failure to observe certain statutory requirements.

*Hamilton Trust Co.* v. *Clemes*, 17 App. Div. 152, affirmed.

(Argued May 7, 1900; decided June 12, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered May 13, 1897, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought to foreclose a mortgage for $150,000,

dated March 1, delivered June 1 and recorded June 12, 1895, given by the Horicon Improvement Company to the plaintiff as trustee for the bondholders, upon certain premises near Lake George known as the Lake House and Prospect Mountain properties.

The appellants, as subsequent judgment creditors of the mortgagor, defend upon the ground that the mortgage is illegal and void as to them because it was given with intent to defraud and without complying with certain statutory requirements.

The trial justice decided all the issues in favor of the plaintiff and the Appellate Division affirmed, but not unanimously, so far as appears.

The facts, so far as material, are stated in the opinion.

*C. H. Sturges* for appellants. The mortgage exceeded the amount of the paid-up capital stock of the Horicon Improvement Company, and more than equaled two-thirds of the value of the corporate property of the company at the time of issuing the obligations secured by it, and was, therefore, unauthorized and void, at least, for the excess. (L. 1892, ch. 688, §§ 2, 42; *Gamble* v. *Q. C. Water Co.*, 123 N. Y. 91.) The Horicon Improvement Company never authorized the execution of this mortgage. (*R. S. Bank* v. *Averill*, 96 N. Y. 467; *Hoyt* v. *Thompson*, 19 N. Y. 207; *Munson* v. *S. G. & C. R. R. Co.*, 103 N. Y. 58; *Davidson* v. *W. G. L. Co.*, 99 N. Y. 558; *State* v. *Carrol*, 38 Conn. 449; *Cronin* v. *Gundy*, 16 Hun, 520; *H. W. Co.* v. *De Kay*, 36 N. J. Eq. 548; *Eno* v. *Crooke*, 10 N. Y. 60; *Castle* v. *Lewis*, 78 N. Y. 131.) The mortgage was given with intent to defraud the creditors of the corporation, and is invalid as against them. (*Nat. T. W. Co.* v. *Gilfillan*, 124 N. Y. 302.)

*Edwin C. Low* for respondent. The mortgage and bond issue did not exceed the amount of the company's full paid capital stock. (*N. B. Nat. Bank* v. *A. B. C. Co.*, 91 Hun, 447; *Beebe* v. *R. L. H. & P. Co.*, 13 Misc. Rep. 737; *O.*,

*etc., Co.* v. *Canney,* 54 N. H. 295 ; *De Camp* v. *Dobbins,* 29 N. J. Eq. 36 ; *Auerbach* v. *Le Soeur Mill Co.,* 28 Minn. 291.) The Horicon Improvement Company authorized the execu= tion of the mortgage. (*M. & F. Nat. Bank* v. *Jones,* 7 Misc. Rep. 207 ; 90 Hun, 605 ; *Paulding* v. *C. Steel Co.,* 94 N. Y. 334 ; *R. S. Bank* v. *Averell,* 96 N. Y. 467 ; *Lord* v. *Y. F. G. Co.,* 99 N. Y. 547 ; *Welch* v. *I. & T. Nat. Bank,* 122 N. Y. 177 ; *G. S. Co.* v. *Whitin,* 69 N. Y. 328 ; *Beebe* v. *R. L. H. & P. Co.,* 3 App. Div. 334.)

VANN, J.   When the Horicon Improvement Company was organized its charter provided for only three directors, but, when the mortgage in question was given a few months later, the number of directors had been increased to seven.   As the resolution to mortgage could not have been passed without the vote of one or more of the additional directors, who were not stockholders of record at the time, but simply assignees of a certain number of shares represented by a stock certificate issued in the name of another person, it is claimed by the appellants that the mortgage is invalid because it was author= ized by directors who, not having been recorded as stockhold= ers upon the stock book, were ineligible under the statute. (Stock Corp. Law, L. 1890, ch. 564, §§ 20, 24 and 29.)

The appellants also claim that the mortgage is void because the sum secured thereby exceeded " an amount equal to two= thirds of the value of its (the corporation's) corporate property at the time of issuing the " bonds, such value being more than the amount of the paid-up capital stock in violation of said statute.   (§ 2.)

It is further claimed that the mortgage, although authorized by all the stockholders there were, was not in fact authorized by any stockholder, because there was no stock book, as required by section 29, and hence no stockholders within the meaning of the statute.

These objections to the validity of the mortgage, as against subsequent judgment creditors, were urged among others in

54

the courts below, but they were all disposed of upon satis-
factory grounds by the opinion of the learned Appellate
Division. (*Hamilton Trust Company* v. *Clemes*, 17 App.
Div. 152.)

We are also of the opinion that there is still another conclu-
sive answer to the position taken by the appellants, which we
will briefly discuss, as it has not thus far been considered.

The Horicon Improvement Company was organized under
the Business Corporation Law (L. 1890, ch. 567; L. 1892,
ch. 691). The three original directors named in the certificate
of incorporation became such by direct command of the stat-
ute and not through an election by stockholders. In the
nature of things there can be no stockholders at the date of
incorporation, and hence the provision that the directors shall
be chosen "from the stockholders  *  *  *  by a majority
of the votes of the stockholders voting" has no application to
"the directors for the first year" named in the certificate pur-
suant to law. (Stock Corp. Law, § 20; Business Corp. Law,
§ 2, par. 8; *McDowell* v. *Sheehan*, 129 N. Y. 207; *David-
son* v. *Westchester Gas Light Company*, 99 N. Y. 558,
565.)

In the case last cited the court, referring to a similar pro-
vision of another statute, said : " The language of section 1 of
the act, by express terms, makes the persons named in the cer-
tificate of incorporation, as such, directors of the company for
the first year of its existence, and confers upon such persons full
power to act as directors in the performance of any corporate
duty after the filing of such certificate. The corporate author-
ity of such an organization must from necessity be co-incident
with the inception of its corporate existence, and antedate the
acquisition by it of property or the issue of stock certificates
representing such property."

The three original directors, therefore, were directors *de
jure*, clothed with all the powers of the corporation and
authorized to make any contract in its behalf that it was capa-
ble of making. While they were the sole directors and in
January, 1895, they caused the Horicon Improvement Com-

pany to enter into a contract with the Otis Engineering & Construction Company, whereby the latter agreed to lend the former the sum of $30,000 in cash and to make extensive improvements upon the Lake House and Prospect Mountain properties. Upon performance of this agreement by the Otis Company, the Horicon Company agreed to give it $50,000 in full paid stock and $150,000 in bonds of five hundred dollars each, bearing interest at the rate of six per cent, to be issued by the company last named and duly secured by a first mortgage. Early in June, 1895, said contract was fully performed by the Otis Company on its part, the $30,000 paid over and the improvements completed and accepted. These improvements so increased the value of the property of the Horicon Company as to make its assets exceed, by more than one-third thereof, the amount of the proposed mortgage.

In the meantime the number of directors of the Horicon Company had been increased to seven, and when the bonds were issued and the mortgage given to secure them, some of the new directors voted upon the necessary resolution and their votes were required in order to adopt it. Fifty of the bonds were delivered to the Otis Company, or to a third person upon its order, July 9th, and the remainder July 18th, 1895, when all the stockholders and directors of the Horicon Company signed an instrument whereby they ratified the delivery made on the 9th and authorized the delivery of the 18th.

Thus we have a valid agreement in writing, made by one business corporation to give a first mortgage upon its assets for a certain amount and for a specified consideration, to another business corporation; full performance by the latter; a legal obligation to perform by the former, and an effort to perform by giving the mortgage in question, but, as it is claimed, there was a failure to observe certain statutory requirements. Even upon this assumption the mortgage was valid, in equity, under the circumstances, as against junior judgment creditors.

In *Matter of Howe* (1 Paige, 125) Chancellor WALWORTH stated that he had found no case, reported in this state, where

the subject had been examined, but after reviewing the English authorities and some in other states, he reached the conclusion that an agreement for a mortgage is in equity a specific lien on the land prior and superior to the claims of subsequent judgment creditors.

This case was followed by that of *Chase* v. *Peck* (21 N. Y. 581), where, upon receiving a grant of land, the grantee executed an agreement, not under seal, to support and maintain the grantor, pledging for that purpose the produce of the land, and, should that prove insufficient, appropriating the entire fee. The grantee, having become insolvent and unable to perform his contract to maintain the grantor, reconveyed the land partly for the purpose of providing for the support of the grantor and partly to hinder and delay creditors. It was held that the agreement, being the consideration for the grant, took effect as an equitable mortgage of the land and that a judgment creditor purchasing the land upon sale under execution, took subject to the equitable mortgage. It was further held that the remedy of the judgment creditor was an action to redeem and for an accounting, if necessary.

*Payne* v. *Wilson* (74 N. Y. 348) is an instructive case upon the subject. Judge FOLGER, following the cases already cited, held, with the concurrence of all the judges who participated in the decision, that " an equitable mortgage may be constituted by any writing from which the intention so to do may be gathered, and an attempt to make a legal mortgage, which fails for the want of some solemnity, is valid in equity ; * * * that an agreement for a mortgage, is, in equity, a specific lien upon the land, * * * and that an equitable mortgage thus created, is entitled to a preference over subsequent judgment creditors."

The most remarkable case in this state is that of *Perry* v. *Board of Missions, etc.* (102 N. Y. 99). A board of missions was authorized to take and hold property used for diocesan purposes, but was subject to the directions given it by the diocesan convention, which appointed a committee to take steps for procuring a residence for the bishop of the diocese. The

plaintiff, under the advice of the bishop and with the consent of the committee, purchased certain premises, and, at the request of the bishop, commenced making repairs and improvements. The committee reported the facts to the annual meeting of the convention, which passed a resolution directing a transfer of the title of the property to the defendant, to be held and used as a residence for the bishop, and authorizing it to execute a bond and mortgage thereon to secure the payment of a prior mortgage and of the sum advanced for repairs, etc. When this resolution was passed the work of repair was in progress, but only a small part thereof had been paid for. The plaintiff advanced the money to complete the work; the premises were conveyed to the defendant, as directed, and a resolution was passed by its directors accepting the conveyance and directing the execution of a bond and mortgage, for a sum specified, to be applied to the payment of the prior mortgage and the expenses of the repairs and improvements. This was done, but when the moneys realized were applied as directed they were insufficient to pay the whole amount so advanced by the plaintiff. It was held that the plaintiff was entitled to a lien in the nature of a mortgage upon the premises for the balance, both because of the special agreement embodied in the resolution of the convention and under the general doctrine of equity, which gives a right equivalent to a lien when the rights of parties cannot be otherwise secured; that the said resolution was not limited to the sums already advanced, but included as well all subsequent advances for the purposes specified, and that in an action to have an equitable lien declared, a judgment directing a sale of the property, as in case of a mortgage foreclosure, was proper.

So in *White Water Valley Canal Company* v. *Vallette* (62 U. S. 414) it was held that bonds issued by a canal company, pledging the real and personal property of the company for the payment of debts, and containing other corresponding stipulations, will be treated by a court of equity as a mortgage and enforced according to the intention of the contracting parties. (See, also, *Husted* v. *Ingraham*, 75 N. Y. 251;

*Hale* v. *Omaha National Bank,* 64 N. Y. 555 ; Pomeroy's Equity Jurisprudence, § 1237 ; Jones on Mortgages, § 163 ; Thomas on Mortgages, § 46 ; Miller on Equitable Mortgages, pp. 1, 2, 216 ; Jones on Railroad Securities, § 73.)

We think, therefore, that the rights of the appellants were inferior to those of the bondholders, and that they were in no position to successfully resist the effort to foreclose.

The judgment appealed from should be affirmed, with costs.

PARKER, Ch. J., GRAY, BARTLETT, MARTIN, CULLEN and WERNER, JJ., concur.

Judgment affirmed.