STATE BANK OF WILLIAMSON v. FISH et al.

(Supreme Court, Special Term, Wayne County.   December 30, 1909.)

1. BANKRUPTCY (§ 165*)—PREFERENCE BY BANKRUPT—SUBSTITUTION OF SECURITIES.

A mortgage by a bankrupt executed within four months of the filing of its petition should be upheld in equity in so far as it represents and continues valid and subsisting liens of prior mortgages discharged at the time of its delivery, though it may unlawfully prefer other debts secured thereby.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 165.*]

2. CORPORATIONS (§ 477*)—MORTGAGE EXECUTED WITHOUT STOCKHOLDER'S ASSENT—RIGHT OF TRUSTEES IN BANKRUPTCY TO ATTACK.

Where no stockholder objects to a corporate mortgage because given without the statutory assent of stockholders to its execution, trustees in bankruptcy of the corporation cannot attack it on such ground.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1869; Dec. Dig. § 477.*]

3. BANKRUPTCY (§ 165*)—PREFERENCE BY BANKRUPT—INCREASE OF MORTGAGE LIEN.

An increase in a mortgage lien on a bankrupt's property, supported by a new and adequate consideration, and not lessening its estate, or impairing in any respect the fund available to pay general creditors, must be sustained, though within the time in which a preference of a creditor is invalid under the bankruptcy law (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]).

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 165.*]

4. BANKRUPTCY (§ 166*) — PREFERENCE BY BANKRUPT — ASSIGNMENT OF ACCOUNTS AS COLLATERAL SECURITY.

An assignment to a bank of accounts as collateral security within four months of filing a petition in bankruptcy by the assignor is invalid if given to create a preference, and the bank then knew, or had reasonable cause to believe, it was so intended.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 166.*]

5. BANKRUPTCY (§ 303*)—PREFERENCE BY BANKRUPT—BURDEN OF PROOF AS TO VALIDITY OF TRANSACTION.

It is incumbent on a bank to whom accounts were assigned as collateral security when the bankrupt assignor could not lawfully prefer creditors to show the transaction was not void as a preference, but a substitution of securities previously held.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 303.*]

6. BANKRUPTCY (§ 303*)—PREFERENCE BY BANKRUPT—SUFFICIENCY OF EVIDENCE AS TO VALIDITY OF TRANSACTION.

Evidence *held* insufficient to show that an assignment of accounts to a bank as collateral security was a substitution of securities previously

·*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

held, and so not void as a preference because made within four months of filing a petition in bankruptcy by the assignor.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 303.*]

7. FIXTURES (§ 18*)—BETWEEN MORTGAGEE AND TRUSTEE IN BANKRUPTCY— VACUUM PAN FOR CONDENSING MILK.

A vacuum pan used in connection with a plant for condensing milk is so attached to the real estate as to become an integral and essential part of the plant, and is covered by a mortgage on the land.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 32–46; Dec. Dig. § 18.*]

8. CHATTEL MORTGAGES (§ 87*)—NECESSITY OF FILING IN TOWN CLERK'S OFFICE.

Personal property may be treated as not covered by a mortgage of real and personal property where not filed in the office of the clerk of the town where the mortgagor resides.

[Ed. Note.—For other cases, see Chattel Mortgages, Dec. Dig. § 87.*]

9. BANKS AND BANKING (§ 116*)—KNOWLEDGE OF DIRECTORS AS NOTICE TO BANK.

Where the principal directors of a bank are also directors of a corporation whose property is heavily mortgaged to the bank, the bank should be held to have notice that fixtures of considerable value covered by the mortgage were not paid for, and were bought under a conditional contract providing title should remain in the seller till paid for in full.

[Ed. Note.—For other case, see Banks and Banking, Cent. Dig. §§ 282–287; Dec. Dig. § 116.*]

Action to foreclose a mortgage by the State Bank of Williamson against William G. Fish and others. Findings ordered as to the sale and distribution of the proceeds.

Frank E. Young, for plaintiff.

Horace G. Pierce and William H. Beach, for defendants Fish, Coon, and George F. Hixson, as Trustee in Bankruptcy, etc.

F. E. Converse, for defendant Palmer.

Kelly & Kelly, for defendants Young, Beach & Maher.

Isaac Adler, for defendant E. Keeler Co.

Hale & Bronk, for defendants Kuhn and Smith.

SUTHERLAND, J. The mortgage which the plaintiff is seeking to foreclose in this action is dated July 1, 1908, was acknowledged July 4th, delivered July 6th, and recorded July 13th of that year in the Wayne county clerk's office, and was made to secure the payment of $12,000 due the plaintiff from the Wayne County Condensed Milk Company, the mortgagor, a bond for $12,000 accompanying the mortgage. It covers the real estate owned by the company, a domestic corporation, at Ontario Center, in Wayne county, on which its plant is located; and the mortgage also covers certain machinery declared in the mortgage to be fixtures, and certain apparatus and utensils connected with the business which, from their nature, appear to be personal property. The mortgage was not filed in the office of the town clerk of the town of Ontario, where the mortgagor had its principal place of business. The petition in bankruptcy was filed October 20, 1908, within four months of the date of the mortgage. The foreclosure is resisted by the trustees in bankruptcy on the ground that the

mortgage was given and received for the purpose of creating an unlawful preference. They claim, also, that, in so far as it attempts to create a lien upon personal property, it is void as to creditors, because it was not filed in the town clerk's office. Two boilers were purchased by the company in February, 1908, from the E. Keeler Company, under an agreement that the title to the boilers should remain with the vendors until the boilers were fully paid for. These boilers were bricked in and so affixed to the realty as to become an essential part of the plant. The E. Keeler Company claims, however, the right to remove the same under their contract unless the balance of $800 due on their contract is paid. The defendants Young, Beach, & Maher, copartners, have a mechanic's lien upon the premises arising out of labor performed and materials furnished by them in the making of improvements upon the plant, a notice of lien having been duly filed and docketed August 25, 1908; and they contest the validity of plaintiff's mortgage, and ask that the equities of all the parties be determined in this action, and that the premises be sold and their liens satisfied out of the proceeds thereof.

I am convinced by the evidence that the Wayne County Condensed Milk Company was insolvent at the time the mortgage was made, and intended to give a preference thereby to the plaintiff, and that the plaintiff, knowing that the company was insolvent, took this mortgage intending to obtain thereby a preference as to $2,000 of the $12,000 secured thereby; but, as to the remaining $10,000 of the total $12,000 consideration, the transaction consisted merely of a substitution for or a confirmation of two previous mortgages which were valid and subsisting liens, viz., a mortgage for $4,000 dated April 12, 1905, given by Lewis W. Johncox and wife to Jayne & Mason, and assigned to the plaintiff, which was a lien upon the premises when purchased by the company in May, 1905, and a mortgage of $6,000, dated September 27, 1906, given by the company to the plaintiff to secure the payment of that amount advanced by the plaintiff to the company. These two mortgages were discharged by the plaintiff at the time the mortgage in suit was delivered; and the mortgage in suit, in so far as it represents and continues in fact the liens held by the plaintiff against the plant of the company at the time the substitution of securities was made should be upheld in equity.

But in this respect it is shown that at the time the $6,000 mortgage was made there was no statutory consent by two-thirds of the stockholders, as required by the statute for the making of a mortgage by such a corporation. At the time the $12,000 mortgage was made such consent was duly obtained. So it is claimed by the defendants that the $6,000 mortgage never had validity because of the want of such assent. And in Vail v. Hamilton, 85 N. Y. 453, the Court of Appeals seems to have held that the receiver of an insolvent corporation could attack a mortgage given by the corporation for the reason that the stockholders had not given their statutory assent to its execution, but the right of any one except a stockholder to attack a corporate mortgage for this reason was doubted in Paulding v. Chrome Steel Co., 94 N. Y. 334, in which the opinion was written by the same judge who

wrote the opinion in Vail v. Hamilton; and in the later cases it seems to be announced as the correct principle that the corporation itself, which has received the benefit of the consideration for such a mortgage (or its creditors), cannot attack it on the ground that stockholders had not given their statutory consent, without returning the consideration received by it at the time the mortgage was made. Hamilton Trust Co. v. Clemes, 17 App. Div. 152, 45 N. Y. Supp. 141, affirmed 163 N. Y. 423, 57 N. E. 614; Atlantic Trust Co. v. Crystal Water Co., 72 App. Div. 539, 76 N. Y. Supp. 647. No stockholder is here objecting, and I am inclined to deny the right of the trustees in bankruptcy to attack the $6,000 mortgage on this ground.

At the time the mortgage in suit was made, the indebtedness of the company to the bank was not increased in reliance thereon. The increase of the amount of the mortgage over the previous liens represented indebtedness that was already existing; but it appears that on the 23d of June, 1908, the company assigned to the bank as collateral security for notes and indebtedness accounts receivable owing to the company amounting to upwards of $7,000; and it is claimed by the plaintiff that at the time the mortgage was given in July the collateral held by the bank represented by these assigned accounts was relinquished to the company, and that the company thereafter collected upon those accounts thus relinquished several thousand dollars, being an amount in excess of the increase of the mortgage lien. And accordingly it is claimed by the plaintiff that the increase of the mortgage lien is supported by a new and adequate consideration, and that the estate of the bankrupt was not lessened thereby, nor the fund available for the payment of general creditors impaired in any respect. If this is so, the mortgage must be sustained in its entirety. But the assignment of accounts to the plaintiff June 23d was within four months of the filing of the petition in bankruptcy, and that assignment is itself invalid if it was given to create a preference and the bank then knew or had reasonable ground to believe that it was so intended; and the evidence shows that the officers and directors of the bank did know that the corporation was insolvent at that time, and the purpose of the company to create and of the plaintiff to receive a preference is sufficiently shown. But in this respect it is again claimed by the plaintiff that the assignment of accounts of June 23d was itself a substitution of securities, and that since October, 1907, the bank had held continuously assignments of accounts for $3,000 and upwards, for which the accounts of June 23d were substituted; the former accounts being then relinquished.

This is the vital point as to the validity of the extra $2,000 in the mortgage in suit; and it was incumbent upon the plaintiff to give satisfactory evidence that the assignment of June 23d was not void under the bankruptcy law (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), but was a substitution of securities previously held. One of the officers of the bank has testified generally to the effect that the accounts due the company were 30 or 60 day accounts, and were assigned from time to time by the company to the bank as security for the notes of the company held by the bank, and

that as these accounts became due from time to time the bank allowed the company to collect them by substituting new accounts for those then falling due. But there appears to have been no record kept of these assigned accounts on the books of the company, distinguishing the assigned from the unassigned accounts receivable; and, when the accounts covered by these assignments were collected by the company, the money was deposited to the knowledge of the bank in the general account of the company, and drawn upon for general purposes. There was no attempt apparently by the bank to collect the accounts in its own right, and we have not been furnished with a list of the accounts which the bank claims it held prior to the assignment of June 23d; and its officers were unable at the trial to state what those accounts were so that the amount thereof could be verified, and the accuracy of the testimony as to their existence tested in the usual manner, and no written assignment of accounts prior to June 23d is put in evidence. Although the company was allowed to collect all its accounts receivable on the 23d of June, its general account at the plaintiff's bank was overdrawn. Under these circumstances, I do not think the evidence should be held to be sufficient to establish the proposition that on June 23d the bank held outstanding unpaid accounts which had been assigned to it by the company for any considerable amount which, on that date, were relinquished in reliance upon the transfer of the new accounts of June 23d. And accordingly I hold that inasmuch as the bank June 23d had good reason to believe that the company was insolvent, and as the transfer of the accounts of that date was made by the company and received by the bank for the purpose of creating a preference which is unlawful under the bankruptcy law, the relinquishment of the accounts assigned June 23d did not furnish an adequate supporting consideration for the increase of the mortgage upon the plant from $10,000 to $12,000. But the plaintiff is entitled to foreclose such lien to the amount of $10,000 and interest, as it had on the 1st day of July, 1908, when the new mortgage was dated.

I think the vacuum pan is so attached to the real estate as to become an integral and essential part of the plant, and that the plaintiff may hold the same under its mortgage to the extent indicated. There are other articles connected with the establishment which are severable or movable without any injury to the plant, and may be treated as personal property not covered by the valid mortgages, and therefore belonging to the trustees in bankruptcy, upon which the plaintiff has not enforceable claim. As to the boilers put in by the E. Keeler Company, I am satisfied that knowledge of the fact should be charged upon the plaintiff that the boilers had not been paid for, and were purchased by the company under a conditional contract providing that the title should remain in the vendor until the boilers are paid for in full. Some of the principal directors in the bank were directors of the creamery company; and the relations were such that the court can fairly hold that the bank had notice of the conditions under which the boilers were purchased. It would be harmful undoubtedly to the plant if the E. Keeler Company were to tear down the brickwork and remove the boilers which are needed for the successful operation of

the plant. Accordingly, it is for the interests of all parties concerned that the E. Keeler Company be paid the $800 due to it upon its contract out of the proceeds of the sale.

Findings may be prepared in accordance with the views herein expressed, and directing a sale of the property upon which the plaintiff is held to have a lien, and that out of the proceeds of the sale there be paid (1) the taxable costs of the plaintiff, and also costs which are allowed separately to the defendants E. Keeler Company, the trustees in bankruptcy, and Young, Beach & Maher; (2) that the claim of E. Keeler Company be then paid; (3) that the plaintiff then be paid the sum of $10,000, with interest thereon from the dates specified in the prayer for judgment in the complaint; (4) that out of the remaining proceeds of sale the defendants Young, Beach & Maher be paid the amount of their lien, with interest, and the surplus, if any, be paid to the trustees in bankruptcy. Jacob E. Brasser, Esq., is appointed referee to make the sale.