## In re PAUL DE LANEY CO., Inc.

Circuit Court of Appeals, Second Circuit.
June 25, 1928.

No. 289.

1. Corporations ⬤⟶471—Cancellation of corporation's mortgage held sufficient consideration for promise to substitute bonds secured by trust mortgage (Stock Corporation Law, N. Y. § 69).

Cancellation of corporation's mortgage securing return of collaterals loaned to mortgagor would be sufficient consideration for mortgagor's promise to substitute for such mortgage bonds secured by subsequent trust mortgage, and bonds delivered pursuant to such promise would be validly issued, under Stock Corporation Law N. Y. (Consol. Laws, c. 59) § 69, whether or not mortgaged property was equal in value to market value of bonds.

2. Corporations ⬤⟶471—Corporation bonds may be issued for property of any value, if intended as consideration, not merely to secure pre-existing debt (Stock Corporation Law N. Y. § 69).

Provision that corporation bonds shall not be issued for less than fair market value thereof having been eliminated from Stock Corporation Law N. Y. (Consol. Laws, c. 59) § 69, property of any value will serve, if really intended as consideration for bonds, and not merely a cover to obtain security for a pre-existing debt.

3. Bankruptcy ⬤⟶340(4)—Referee's conclusion that bonds were issued to mortgagee by bankrupt corporate mortgagor to secure pre-existing unsecured debt held unwarranted (Stock Corporation Law N. Y. § 69).

Conclusion of referee in bankruptcy that delivery of bonds by bankrupt corporation to mortgagee who had canceled mortgage securing bankrupt's obligation to return collaterals loaned by him, was issuance thereof as security for a pre-existing unsecured debt, within prohibition of Stock Corporation Law N. Y. (Consol. Laws, c. 59) § 69, held unwarranted, in view of his testimony that mortgage was canceled on understanding that he should receive bonds to be issued under subsequent trust mortgage.

4. Corporations ⬤⟶480½—Mortgage withheld from record with knowledge that trust mortgage, securing bonds to be substituted, was to be made, held released.

Withholding of corporation mortgage from record with knowledge that new trust mortgage, securing bonds to be substituted for former mortgage, was to be made and recorded, was as effective a release of mortgage as any.

5. Corporations ⬤⟶474—Invalidity of corporate mortgagor's pledge of bonds to bank did not follow them into hands of mortgagee, to whom mortgagor delivered them after redelivery to mortgagor by bank.

Invalidity of corporate mortgagor's pledge of bonds to bank as security for pre-existing loan does not follow them into hands of mortgagee, to whom delivered by mortgagor, as substituted security for return of collaterals loaned to it, after cancellation of mortgage and redelivery of bonds to mortgagor by bank, and mort-

26 F.(2d)—61

gagee could assign them to corporation of which he was officer.

6. Corporations ⬤⟶477(6)—Corporate mortgagor may be estopped to make defense that mortgage was not authorized by shareholders, where mortgagee parted with value (Stock Corporation Law N. Y. § 16).

Corporation may be estopped to make defense that mortgage given by it was invalid, because not authorized by shareholders, as required by Stock Corporation Law N. Y. (Consol. Laws, c. 59) § 16, where mortgagee parted with value on giving of, or agreement to give, mortgage, at least if requisite number of stockholders acquiesced therein, while corporation continued to retain benefits received.

7. Corporations ⬤⟶471—Sum paid bank by corporate mortgagee to enable mortgagor to return collaterals loaned by mortgagee held no consideration for bonds pledged to bank to secure mortgagor's note.

Mortgagee's payment of sum to bank to enable bankrupt mortgagor to perform its pre-existing obligation to return collaterals, loaned to it by mortgagor in consideration of agreement to give mortgage, held no consideration for bonds pledged to bank to secure bankrupt's note for such sum.

Appeal from the District Court of the United States for the Western District of New York.

In the matter of the Paul De Laney Company, Inc., bankrupt. From a decree (23 F. (2d) 737), confirming an order of the referee in bankruptcy, the George G. Renneker Company appeals. Reversed and remanded in part, and affirmed in part.

See, also, 26 F.(2d) 937.

Bankruptcy was adjudicated December 15, 1924. Thereafter property described in a trust mortgage made by the bankrupt to secure an issue of bonds was sold free of liens, the lien of said mortgage being transferred to the proceeds of sale in the hands of the trustee in bankruptcy. Various bondholders made claim thereto before the referee. His report disallowed the claim of the Marine Trust Company as holder of $150,000 of such bonds and the claim of George G. Renneker Company as holder of $130,000 of such bonds, and allowed the claims of other holders of bonds. The District Court confirmed his report. In re Paul Delaney Co., 23 F. (2d) 737. The Renneker Company only has appealed, contending that the decree injures it both in denying security to its claim and in recognizing as secured bonds held by others. The interest of the appellant in the allowance of other bonds is based on the fact that the payment of claims allowed against the fund will leave nothing for distribution to unsecured creditors. Decree modified.

Wilcox & Van Allen, of Buffalo, N. Y. (John W. Van Allen, of Buffalo, N. Y., Myer H. Gladstone, of Chicago, Ill., and W. B. Van Allen, of Buffalo, N. Y., of counsel), for appellant George G. Renneker Co.

Charles F. Blair, of Buffalo, N. Y., for trustee in bankruptcy.

Haight, Smith, Griffin & Deming, of New York City (Edgar R. Kraetzer, of New York City, of counsel), for appellees Anchor Cap & Closure Corporation and Capstan Glass Co.

Frank Gibbons and Henry W. Pottle, both of Buffalo, N. Y., for appellee Midland Bank of Cleveland.

Arthur S. Tennant, of Westfield, N. Y., and Dwight C. Dale, for respondent State Bank of Brocton.

Glenn W. Woodin, of Dunkirk, N. Y., for respondent Dunkirk Trust Co.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). This controversy involves the application of section 69 of the Stock Corporation Law of New York (Consol. Laws, c. 59) which forbids the issuing of stock or bonds "except for money, labor done or property actually received"—a statute which has previously been before us in Re Waterloo Organ Co., 134 F. 345; Id., 154 F. 657; In re Progressive Wall Paper Corp., 229 F. 489, L. R. A. 1916E, 563; Davis v. Seneca Falls Mfg. Co., 17 F.(2d) 546. To determine its application to the bonds held by the Renneker Company requires a recital of the circumstances under which they were obtained by it.

Under date of September 1, 1921, the bankrupt executed a trust mortgage to the Marine Trust Company, as trustee, to secure a bond issue of $750,000. Bonds of the face value of $300,000 were delivered to the Bank of Buffalo on September 15, 1921, as collateral security for a debt of $267,000 then owing to the bank by the bankrupt for loans previously made to it. The bankrupt had obtained this line of credit through the assistance of George G. Renneker, who was an officer of the bankrupt as well as of the Renneker Company, the appellant. In 1920, Mr. Renneker lent the bankrupt securities of the value of $150,000 to be pledged with the Bank of Buffalo as collateral for an advance by it to the bankrupt of $300,000. It was agreed by the bank that this collateral would be returned to Renneker when the bankrupt's loan should be reduced to $150,000. The bankrupt agreed with Renneker before he lent the collateral, to give him its note for $150,000, payable May 1, 1921, as security for the return of his collateral. It also agreed to execute, upon his request, a mortgage of its real estate to secure such note. The execution of such note and mortgage was authorized by the directors of the bankrupt, as shown by the minutes of a meeting held October 7, 1920, and Renneker testified that the note and mortgage were delivered shortly thereafter; but he was not certain whether the mortgage was for $100,000 or $150,000. He further testified that he never filed this mortgage for record, and that he "relinquished" it when the bankrupt later made its mortgage securing the $750,000 bond issue. On May 25, 1921, the directors passed a resolution authorizing the delivery to Renneker of $150,000 of the corporation's bonds. This was several months prior to the execution of the trust mortgage of September 1, 1921, securing the $750,000 bond issue, and nothing appears to have been done under the resolution. Renneker continued to hold the unrecorded mortgage. Elsewhere in his testimony Renneker says:

"When the big mortgage was put on, that (the mortgage he held) was canceled with the understanding that when the bonds were issued I was to get $100,000 worth of those bonds. I never got those bonds and as I tried to get them from time to time Mr. De Laney always made some excuse that the bank was holding them and there would be trouble if he would try to get them."

In January, 1922, the bankrupt still owed the bank about $300,000, and the bank still held Renneker's collateral. It was arranged between Renneker and the bankrupt to reduce this indebtedness to $150,000 in order that Renneker might get back his collateral. The reduction was accomplished as follows: The bankrupt paid the loan down to $250,000; the bank then drew a draft on Renneker for $100,000 which it sent to Chicago (his residence) for collection, accompanied by his collateral, and the draft was paid. The bank released to the bankrupt $150,000 of its bonds. The bankrupt sent to Renneker its ninety-day note for $100,000, and $150,000 of its bonds to be held as security therefor. This note was subsequently renewed by others, payable to the order of the Renneker Company, and reciting the collateral as $130,000 of the bankrupt's bonds. Parenthetically it may be noted that $20,000 of the bonds originally sent Renneker had been returned to the bankrupt to enable it to borrow from another creditor.

[1] It is quite impossible to tell from Renneker's testimony whose were the securities loaned to the bankrupt in 1920 to be pledged,

to the bank. He speaks of them now as his, now as the Renneker Company's. The referee found they were his. We accept this finding as correct, although the result would be no different if the securities were the company's, for then Renneker would be acting as its agent throughout. His loan of collaterals to the bankrupt was consideration for the latter's agreement to give him a mortgage to secure its obligation to return them. That agreement it attempted to perform. Assuming for the moment that the mortgage it gave him was valid, although its validity is attacked because there is no evidence that its execution was authorized by the stockholders, then his cancellation of the mortgage would be a sufficient consideration for the bankrupt's promise to substitute for it bonds secured by the trust mortgage of September 1, 1921, and bonds subsequently delivered pursuant to such promise would be validly issued. See Westinghouse, etc., Co. v. Brooklyn R. T. Co., 288 F. 221, 246 (D. C.); Rahway Nat. Bank v. Thompson, 7 F.(2d) 419 (C. C. A. 3); Woods & Sons Co. v. Southern Trust Co., 13 F.(2d) 367 (C. C. A. 3).

[2] It may be inferred, we think, that the delivery of the bonds sent to him in January, 1922 (at least to the extent of $100,000, if that was the amount he was to receive in exchange for cancellation of the mortgage according to "the understanding"), was in performance of this agreement. If so, such bonds would, as already stated, be validly issued. Cancellation of the mortgage would be the receipt of property by the bankrupt required by the statute to support the issuance of the bonds; and it would make no difference whether the property mortgaged was equal in value to the market value of the bonds. Formerly the statute provided that "no such bonds shall be issued for less than the fair market value thereof." This clause was subsequently eliminated, and we see no escape from holding that now property of any value will serve, if it be really intended as the consideration for the bonds and be not merely a cover to obtain security for a pre-existing debt. McQuoid v. Queens, 143 App. Div. 134, 127 N. Y. S. 867. See, also, Westinghouse Electric & Mfg. Co. v. Brooklyn Rapid Transit Co. (D. C.) 288 F. 221, at page 232.

[3-5] The referee found that the mortgage given Renneker was canceled, without finding the date of cancellation or making any finding with respect to Renneker's testimony that this was done on the understanding that he should receive bonds to be issued under the trust mortgage of September 1, 1921. He concluded that Renneker's claim was unsecured in January, 1922, and that the delivery of bonds at that time was an issuance of them as security for a pre-existing debt and within the prohibition of the statute as interpreted in the Progressive Wall Paper Case, supra. We think this conclusion unwarranted in view of Renneker's testimony, which was in no respect denied. The cancellation of the mortgage no doubt consisted in merely continuing to withhold it from record with the knowledge that the new trust mortgage was to be made and recorded, but this was as effective a release as any. Granting that it was done pursuant to the understanding testified to, the bankrupt was under obligation to give Renneker the bonds agreed upon as a substituted security. The bonds delivered to him in January, 1922, should be treated as given in performance of that obligation. Apparently these bonds were part of the $300,000 lot invalidly pledged to the Bank of Buffalo as security for its pre-existing loan. But the invalidity which adhered to them while held by the bank does not follow them into the hands of Renneker. He did not take them by assignment from the bank. The bank redelivered them to the bankrupt. They were then like bonds which had never been issued. The bankrupt could issue them for a valid consideration, and did so in sending them to Renneker pursuant to its obligation to give them to him as a substituted security. If valid in his hands he could assign them to the Renneker Company. This he apparently did, as the renewal note they secure now runs to the order of his corporation.

[6] The foregoing argument is based upon the assumption that the mortgage for which the bonds were substituted was a valid lien upon the bankrupt's property. It is contended that the mortgage was not valid because not shown to have been authorized by the shareholders as required by section 16 of the New York Corporation Law. But the corporation may be estopped to make this defense where the mortgagee parted with value upon the giving of, or agreement to give, the mortgage, at least if the requisite number of stockholders acquiesces in it while the corporation continues to retain the benefits received. See Hamilton Trust Co. v. Clemes, 17 App. Div. 152, 45 N. Y. S. 141, affirmed 163 N. Y. 423, 57 N. E. 614; Atlantic Trust Co. v. Crystal Water Co., 72 App. Div. 539, 76 N. Y. S. 647; G. V. B. Mining Co. v. First Nat. Bank, 95 F. 23 (C. C. A. 9); Matter of Endicott Laundry Co., 128 Misc. Rep. 413, 219 N. Y. S. 632; In re Post & Davis Co., 219 F. 171,

173 (C. C. A. 2). All the directors voted for the mortgage. What proportion of the stock they represented does not appear. We think that the cause should be sent back in order that testimony may be offered, if any is available, to prove whether or not the mortgage was valid.

[7] The appellant has sought to support his claim also on the ground that the $100,000 paid to the bank in January, 1922, was a new loan to the bankrupt, and so adequate consideration for the bonds pledged to secure the bankrupt's note for that sum. With this contention we cannot agree. The bankrupt was already obligated to return the borrowed collateral, and the loaning of money by Renneker to enable it to perform this obligation would be no more effective to support the issue of bonds then pledged than is the giving of time for payment of a pre-existing debt. See Davis v. Seneca Falls Mfg. Co., supra; Lyon v. Bleeg, 240 F. 405 (C. C. A. 8). Such transactions do not result in the receipt by the corporation of money or property in exchange for the bonds. But, if the bonds were issued pursuant to an agreement to surrender valid security, namely, the original mortgage given to Renneker, then for reasons already stated they were legally issued.

With respect to the bonds which were allowed, and as to allowance of which the appellant has assigned error, we think it unnecessary to add anything to the careful, considered opinion of the District Judge.

The decree in so far as it disallows the claim of the Renneker Company is reversed, and the cause is remanded; in other respects the decree is affirmed. The appellant is allowed half his costs in this court against the trustee in bankruptcy.