*1055 OPINION OF THE COURT
Terry Jane Ruderman, J.
Background
Plaintiff seeks to foreclose on a consolidated mortgage encumbering the residential property located at 1411 Purchase Street in Purchase, New York. The mortgage secures indebtedness under three loans taken by defendant Eileen Karp in the total principal amount of $1,500,000. The first of those loans was made on December 16, 1991, when Karp executed a note and mortgage in favor of Apple Bank for Savings, in the principal loan amount of $500,000, secured by the real property located at 1411 Purchase Street in Purchase, New York. Apple Bank then assigned the note and mortgage to Chemical Bank by assignment dated August 2, 1993, which in turn assigned the note and mortgage to GreenPoint Bank by assignment dated October 19, 1995.
Karp then executed a second note and mortgage dated September 21, 1995 in connection with a loan by GreenPoint Bank in the principal amount of $500,499.41, also secured by the 1411 Purchase Street property. The two mortgages were consolidated and modified so as to constitute a single lien in the amount of $1,000,000, by a consolidation, extension and modification agreement (CEMA), termed the first consolidated agreement, dated September 21, 1995.
North Fork Bank, as successor by merger to GreenPoint Bank, assigned the consolidated note and mortgage to Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for GreenPoint Mortgage Funding, Inc., by assignment dated April 13, 2006.
Also on April 13, 2006, Karp executed a new note, in favor of GreenPoint Mortgage Funding, Inc., by which she agreed to pay a new money loan in the original principal amount of $1,069,068.99, secured by a mortgage, collectively with the first and second mortgage, in favor of MERS as nominee for GreenPoint Mortgage Funding, encumbering 1411 Purchase Street. A second consolidation, extension and modification agreement, termed the second consolidated agreement, along with a new consolidated note and consolidated mortgage, were entered into on the same date, and recorded on August 23, 2006. Unlike the first CEMA, the second CEMA did not list the complete mortgage chain.
*1056 It is asserted without contradiction that Karp has been in default since November 1, 2009.*
Procedural History
The action was commenced by summons and verified complaint filed October 8, 2014. The first cause of action of plaintiff’s complaint sought an order of foreclosure; the second sought reformation of the second CEMA so that it contained a recitation of the complete mortgage chain. Defendant Karp served an answer containing affirmative defenses. An answer was also served by Kip Konigsberg, a tenant at the property served as “John Doe,” containing affirmative defenses and two cross claims against Karp seeking cancellation of the lease and money damages.
On November 18, 2015, plaintiff filed a previous motion (sequence No. 1) for summary judgment. Only Karp opposed the motion. By decision and order filed February 24, 2016, this court denied that motion. Karp’s affirmative defenses to foreclosure were rejected as conclusory and wholly unsubstantiated. Summary judgment was denied solely because plaintiff’s second cause of action, seeking reformation of the second CEMA, which was executed on April 13, 2006 and recorded on August 23, 2006, could not be resolved on the papers presented. Plaintiff argued that correction of the defect in the mortgage was merely ministerial, since reformation would not impose new terms. However, defendant maintained that reformation was not possible because the statute of limitations had expired, and that summary judgment could not be granted in the action without reforming the CEMA.
This court concluded in its February 24, 2016 decision and order that the relief of reformation was unavailable, because the applicable statute of limitations for a reformation claim had expired by the time this action was commenced, but that the parties had not adequately addressed the issues of whether the CEMA is enforceable as written, or, if not, whether relief other than reformation of the CEMA is available. Accordingly, summary judgment was denied at that time.
Plaintiff now moves again for an order granting summary judgment appointing a referee to compute and for related relief, *1057 offering the analysis that was lacking from motion sequence No. 1. It contends that the consolidated mortgage may be enforced despite the CEMA’s failure to recite the entire mortgage chain, and that, in any event, the doctrine of equitable mortgages should be applied here to allow plaintiff’s foreclosure on the consolidated mortgage. In opposition, defendant Karp submits an affidavit which once again challenges the documentation provided by plaintiff to establish its prima facie case. The affirmation of Karp’s counsel also contends that this matter must be stayed due to the November 18, 2016 death of Kip Konigsberg, the tenant who was served as “John Doe” and who served an answer to the complaint containing cross claims against Karp. Counsel for Karp further maintains that the failure to recite the entire mortgage chain in the CEMA is fatal, because in the absence of an explanation of how the error occurred, no equitable remedy may be awarded.
Analysis
Initially, this court previously found that plaintiff made the necessary initial showing with its submission of “the mortgage, the unpaid note, and evidence of the mortgagor’s default” (see Wells Fargo Bank, N.A. v Miller, 150 AD3d 1046, 1048 [2d Dept, May 17, 2017]), and rejected as a matter of law, as unsubstantiated and conclusory, Karp’s asserted affirmative defenses. That determination is the law of the case and Karp’s reasserted affirmative defenses will not be revisited here.
The death of the John Doe defendant, the tenant named Kip Konigsberg, does not require a stay of this action. “[W]here a party’s demise does not affect the merits of a case, there is no need for strict adherence to the requirement that the proceedings be stayed pending substitution” (U.S. Bank N.A. v Esses, 132 AD3d 847, 848 [2d Dept 2015]). Konigsberg was served only in his capacity as a tenant, and his then-leasehold interest in the property, assuming it did not already expire, is in any event subordinate to that of plaintiff. To the extent his cross claims against Karp may survive his death, they are severed and may be brought in a separate plenary action against her.
Turning to the one remaining issue, the court now holds that plaintiff is entitled to a judgment of foreclosure despite the unavailability of the relief of reformation. “[A] consolidation of outstanding loans is a device intended for the convenience of only the contracting parties and cannot impair liens in favor of *1058 parties that are not the contracting parties, which retain their independent force and effect” (Benson v Deutsche Bank Natl. Trust, Inc., 109 AD3d 495, 498 [2d Dept 2013] [internal quotation marks and citation omitted]). The consolidated mortgage merely continues already existing encumbrances on the property, and the consolidated note continues to entitle its holder to foreclose on the consolidated mortgage. There is no confusion or issue as to the exact nature and extent of the debt or the property securing the obligation. Nor was there ever any confusion or dispute as to the chain of the mortgages leading up to the consolidated loan documentation. The failure to include a list of the chain of mortgages leading up to the consolidated mortgages is merely a trivial defect in a single document that should not prevent foreclosure on the consolidated mortgage.
This situation warrants the application of the doctrine of equitable mortgages. The doctrine was well established by the time the Court of Appeals discussed it in 1894, in the case of Sprague v Cochran (144 NY 104 [1894]). Indeed, the doctrine has been acknowledged in each Department of the Appellate Division.
As the First Department explained, “New York has long recognized that ‘an equitable mortgage may be constituted by any writing from which the intention so to do may be gathered, and an attempt to make a legal mortgage, which fails for the want of some solemnity, is valid in equity’ ” (Federal Deposit Ins. Corp. v Five Star Mgt, 258 AD2d 15, 21 [1st Dept 1999], quoting Hamilton Trust Co. v Clemes, 163 NY 423, 428 [1900]). In Federal Deposit Ins. Corp. v Five Star Mgt., the consolidated mortgage at issue was intended to be secured by certain premises, but the deed tendered as security for the mortgage misidentified the premises, although the two previous mortgages had correctly referenced the secured premises. Although the motion court dismissed the foreclosure action based on the error, that decision was reversed on appeal and summary judgment granted to the plaintiff, with the reasoning that although a reformation claim was barred by the statute of limitations, the facts of the case “present [ed] a basis to accord FDIC the right in equity to seek foreclosure on the . . . mortgage” (258 AD2d at 21).
In Canandaigua Natl. Bank & Trust Co. v Palmer (119 AD3d 1422 [4th Dept 2014]), where the motion court had declined to apply the doctrine of equitable mortgages on the ground that an equitable mortgage is available only where the secured prop *1059 erty is erroneously described, the Fourth Department explained that “the availability of an equitable mortgage is not dependent upon the nature ... of the error, but rather upon the existence of a clear intent between the parties that [certain] property be held, given or transferred as security for an obligation” {id. at 1424 [internal quotation marks omitted]). It reiterated that
“[a]n equitable mortgage may be constituted by any writing from which the intention so to do may be gathered, and an attempt to make a legal mortgage, which fails for the want of some solemnity, is valid in equity. While [a] court will impose an equitable mortgage where the facts surrounding a transaction evidence that the parties intended that a specific piece of property is to be held or transferred to secure an obligation . . . , it is necessary that an intention to create such a charge clearly appear from the language and the attendant circumstances.
“ . . . [T]he availability of an equitable mortgage is not dependent upon the nature ... of the error, but rather upon the existence of a clear intent between the parties that [certain] property be held, given or transferred as security for an obligation” {Canandaigua Natl. Bank & Trust Co. v Palmer, 119 AD3d at 1423-1424 [internal quotation marks and citations omitted], citing Hamilton Trust Co. v Ciernes, 163 NY 423 [1900], and Federal Deposit Ins. Corp. v Five Star Mgt., 258 AD2d 15 [1999]).
The Fourth Department has also specifically held that an equitable mortgage can be foreclosed even where a claim for reformation is untimely (see Bank of N.Y. Cent. Region v Cain, 78 AD2d 963, 964 [4th Dept 1980]).
The Second Department acknowledged the doctrine as viable in a case involving a variety of mortgages secured by the same properties, including a senior mortgage that was discharged in error (see Citibank, N.A. v Kenney, 17 AD3d 305 [2d Dept 2005]). It explained that “[t]he inadvertent discharge of the original mortgage, without concomitant satisfaction of the underlying debt, did not extinguish Citibank’s security interest; rather, it left Citibank with an unrecorded, equitable lien, which Citibank could have enforced by way of foreclosure” {id. at 308). It cited a 1912 case from the Second Department which observed that the mortgage at issue there was a valid and en *1060 forceable legal obligation, since even “if it could be successfully claimed that the instrument under consideration was so defective in form as to be invalid as a legal obligation, it might still be sustained as an equitable mortgage” (Sullivan v Corn Exch. Bank, 154 App Div 292, 296 [2d Dept 1912]). The Court in Sullivan went on to recite the essential rule of equitable mortgages: “An equitable mortgage may also be constituted by any writing from which the intention may be gathered; and an attempt to make a legal mortgage, which fails for want of some solemnity, is valid in equity” (id. [internal quotation marks and citations omitted]).
The Third Department also recognized the viability of the doctrine, in New York TRW Tit. Ins. v Wade’s Can. Inn & Cocktail Lounge (199 AD2d 661, 664 [3d Dept 1993]), although in that instance the Court concluded that the question of whether the doctrine was applicable there presented an issue of fact.
Although the mortgage chain is complicated, the parties’ intent here was never in doubt. There is no question that defendant Karp intended the subject property to serve as security for her $1.5 million loan obligation. The evidence establishes, as a matter of law, grounds for the creation of an equitable mortgage. This case presents no issues of fact as to whether an equitable mortgage is appropriate, in contrast with cases such as New York TRW Tit. Ins. v Wade’s Can. Inn & Cocktail Lounge (199 AD2d 661 [3d Dept 1993], supra). Nor is there any requirement that plaintiff establish how the defect in the CEMA occurred before the equitable doctrine may be applied.
Based on the foregoing, plaintiff’s motion for summary judgment on its first cause of action to foreclose on its mortgage is granted.

 Karp does not dispute the alleged default in payment; rather, she asserts that she has not made payments on the mortgage note since May 2007, attempting to create a fact issue regarding who made the payments on her mortgage from 2007 to 2009.